[No. 7354-1-I. Division One. February 25, 1980.]

MARY R. WAGNER, *Appellant*, v. G. CORYDON WAGNER, *Respondent*.

---

*Richard S. White, Rosselle Pekelis,* and *Helsell, Fetterman, Martin, Todd & Hokanson,* for appellant.

*Michael R. Green, Sally E. Mathiasen,* and *Davis, Wright, Todd, Riese & Jones,* for respondent.

JAMES, J.—This case reaches us by way of cross appeals from a post–divorce ruling. Plaintiff wife challenges the

termination of alimony. Defendant husband challenges the determination that the proceeds from the sale of the family home should be divided equally. We affirm.

The parties were married in 1950. After their separation, they entered into a detailed property settlement agreement which was confirmed by a divorce decree on August 24, 1972. The agreement provided that Mrs. Wagner be paid alimony of $8,445 quarterly through June 15, 1974; $7,545 quarterly through June 15, 1975; $6,645 quarterly through June 15, 1977; and $5,745 quarterly for the rest of her life if she did not remarry. The provisions for alimony were, however, made subject to the approval of the court and "subject to modification from time to time by the court, as the conditions of the parties may warrant."

The Wagners' rights in their Tacoma residence were set forth as follows:

It is agreed that from the date of this agreement, until August 31, 1977, plaintiff shall have the right to occupy said family home, as her residence, provided, however, that in the event plaintiff terminates her occupancy of said property, or upon the expiration of the period ending August 31, 1977, whichever is earlier, the parties agree to sell said property and divide, equally, the net proceeds thereof; provided, further, that defendant shall have the right of first refusal to purchase plaintiff's undivided one–half (1/2) interest in the property, within thirty (30) days of the receipt of any offer acceptable to both parties, on the same terms and conditions as contained in said offer. If the property has not been sold prior to August 31, 1977, defendant shall have the option to purchase plaintiff's undivided one–half (1/2) interest in the property, which option defendant must exercise within sixty (60) days after plaintiff terminates her occupancy of the property, or August 31, 1977, whichever is earlier, with the purchase price to be paid by defendant to plaintiff for her undivided one–half (1/2) interest, in the sum of Eighty Seven Thousand Five Hundred Dollars ($87,500.00), cash, on closing. Plaintiff shall supply defendant with a warranty deed, title insurance, and pay the 1% tax on said conveyance.

Mrs. Wagner was required to pay all costs relating to the operation, maintenance, and repair of the residence during her occupancy.

In November 1974, the parties signed a 3–year listing agreement for the residence with a real estate firm. The price was set at $585,000, and each party contributed $5,000 toward the required $10,000 listing retainer. During the summer of 1977, the Wagners listed the house for sale with another real estate firm. Mrs. Wagner spent most of her time in other cities following her divorce.

In September 1977, Mr. Wagner informed Mrs. Wagner that he wished to exercise his option to buy her undivided one–half interest in the house for $87,500. In October 1977, Mrs. Wagner sought a declaratory judgment as to the parties' rights in the Tacoma residence. Two days later, Mr. Wagner petitioned to enforce his right to purchase Mrs. Wagner's interest in the house for $87,500, to clarify the parties' rights to antiques in the house, and to terminate Mrs. Wagner's alimony.

Prior to trial, Mrs. Wagner sought discovery relating to an allegation by Mr. Wagner that his net worth had decreased. Mr. Wagner responded by moving for a protective order, which the trial judge granted on the condition that he withdraw the allegation. The trial judge thereafter assumed that Mr. Wagner had increased his net worth and that he was able to pay alimony.

Mrs. Wagner was then 49 years old and Mr. Wagner, who had remarried in 1974, was 52 years old. Mrs. Wagner's net worth, exclusive of her interest in the antiques and her jewelry (worth more than $100,000) and furs, totaled $775,187. This enabled her to have an annual tax–free income of $37,750.

The trial judge concluded that the quarterly payments were modifiable alimony payments, and that the circumstances of the parties warranted their termination. He concluded that no substantial change of circumstances need be shown, stating as follows:

Now, "and are subject to modification from time to time by the court . . ." and that is what I am asked to do here, modification, elimination, "as the conditions of the parties may warrant." Not upon a substantial change of circumstances, not on change of circumstances, but as the conditions of the parties may warrant. . . .

The trial judge concluded the property settlement agreement's provision relating to Mr. Wagner's option to purchase for $87,500 was inconsistent with the provision that the parties agreed to sell the property and equally divide the net proceeds if Mrs. Wagner occupied the house through August 31, 1977. He ruled that the parties should equally divide the proceeds from the sale of the house, which had taken place by mutual agreement for $300,000 in April 1978.

Mrs. Wagner first contends that a court cannot consider a petition to terminate alimony if the petitioner refuses to permit discovery of his financial condition. She argues that a prerequisite to modification is a showing of a substantial change of circumstances as evidenced by both the ex–wife's needs and the ex–husband's abilities to meet those needs.

The current statute relating to modification of support, RCW 26.09.170,[1] and its predecessor, former RCW 26.08.110, require that a "substantial change of circumstances" be shown before a petition for modification will be granted. *E.g., Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965). Generally, the determination of a "substantial change of circumstances" must be made relative to the needs of the ex–wife and the ability of the ex–husband to meet those needs. *Lambert v. Lambert, supra.* Nevertheless, need is the hallmark of alimony, *Kelso v. Kelso,* 75 Wn.2d 24, 448 P.2d 499 (1968), and an ex–spouse is not to be granted a perpetual lien on the other ex–spouse's earnings when he or she has the ability to earn a living, *e.g., Endres v. Endres,* 62 Wn.2d 55, 380 P.2d 873 (1963); *Young*

---

[1]*In re Marriage of Olsen,* 24 Wn. App. 292, 600 P.2d 690 (1979) states that RCW 26.09.170 is not retroactive.

*v. Young,* 47 Wn.2d 497, 288 P.2d 463 (1955).[2] An ex–wife's improved situation may alone represent a sufficient change in her circumstances to warrant a modification. *See Gorvin v. Stegmann,* 74 Wn.2d 177, 443 P.2d 821 (1968); *Dakin v. Dakin,* 62 Wn.2d 687, 384 P.2d 639 (1963). We hold that the trial judge did not err in excluding evidence of Mr. Wagner's financial situation when it was undisputed that he could easily afford to pay alimony.

Mrs. Wagner next contends that the trial judge erred in concluding that the payments from Mr. Wagner to her constituted alimony rather than a nonmodifiable division of property. She argues that a party having assets running into six figures could have no need for support, citing *Campbell v. Campbell,* 66 Wn.2d 177, 401 P.2d 651 (1965).

■■ Whether payments provided for in a divorce decree that incorporates the parties' property settlement agreement represent alimony or a property division depends on the circumstances and intent of the parties. *Thompson v. Thompson,* 82 Wn.2d 352, 510 P.2d 827 (1973). An ambiguity exists if the payments are designated "alimony" but have the character of a property division. *Thompson v. Thompson, supra.* We conclude that the nature of the payment provisions is ambiguous when viewed in light of Mrs. Wagner's considerable award of assets, a fact which suggests that she could have no need for alimony and that the payments may have been intended as a division of property. *See Campbell v. Campbell, supra.*

In *Campbell,* no reference to alimony or support was made in the divorce decree. The payments were an integral part of the division of property and were made from two trusts. The Supreme Court, noting that it seems a bit ridiculous to suppose that alimony is intended when each party has an annual earning capacity running into five figures,

---

[2] We note that RCW 26.09.090(1)(b) incorporates and expands upon this rule.

classified the payments as a division of property.[3] Here, however, Mr. Wagner agreed to pay "temporary alimony" for Mrs. Wagner's "support and maintenance." While the use of the term "alimony" is not controlling, it is important. *Carstens v. Carstens*, 10 Wn. App. 964, 521 P.2d 241 (1974). The declining schedule of payments is some indication that the parties were mindful of Mrs. Wagner's needs. The agreement provided that payments should cease upon Mr. or Mrs. Wagner's death or upon Mrs. Wagner's remarriage. This belies the notion that a division of property was intended. *Thompson v. Thompson, supra; Carstens v. Carstens, supra.* Finally, the agreement not only specified that the payments shall be subject to modification by the court "as the conditions of the parties may warrant," but provided:

> It is understood and agreed by the parties that this property settlement agreement shall be final and binding, whether or not a divorce is granted or obtained by either party, with the exception that it is understood that the payments called for herein, for the support, maintenance and education of the minor children of the parties, and for alimony, are subject to approval of the court, . . .

This language, too, is at odds with a characterization of the payments as a division of property. *See Thompson v. Thompson, supra.* While the question is a close one, the "alimony" characteristics of the payments predominate over their "property division" characteristics. We hold that the trial judge did not err in denominating the payments "alimony."

Mrs. Wagner also contends that the trial judge erred in ordering a termination of alimony upon the basis of the parties' property settlement agreement rather than on the basis of a substantial change of circumstances. She argues that no such showing was made to the trial judge.

---

[3] Existing case law then held that the maintenance of one's accustomed lifestyle could not be a test of need. *Morgan v. Morgan*, 59 Wn.2d 639, 369 P.2d 516 (1962). RCW 26.09.090(1)(c) now provides that a factor relevant to an award of maintenance is the living standard established during the parties' marriage.

■ The determination whether there has been a substantial and material change of circumstances permitting a modification of support is one resting within the trial judge's sound discretion and will not be disturbed except upon a showing of an abuse of discretion. *E.g., Lambert v. Lambert, supra; Gordon v. Gordon,* 44 Wn.2d 222, 266 P.2d 786 (1954). Though a substantial change of circumstances must be shown to justify a modification of alimony, the Wagners' settlement agreement made it unnecessary that the change be one that was not within their contemplation when the decree of divorce was entered. *Smith v. Smith,* 13 Wn. App. 585, 536 P.2d 179 (1975).

We are satisfied that the following changes of circumstances are substantial and justify the trial judge's termination of Mrs. Wagner's alimony: (1) Mrs. Wagner no longer bears the costs of operating, maintaining, and repairing the Tacoma residence; (2) her children no longer live with her; (3) she will receive one–half the proceeds from the sale of the Tacoma residence; (4) she has, after her extended travels, found a suitable city in which to live; and (5) she has had ample time within which to obtain any education and training that might enable her to supplement her current income.

Mr. Wagner contends that the trial judge erred in awarding Mrs. Wagner one–half the net proceeds from the sale of the Tacoma residence. We do not agree.

The first part of the agreement contemplated that by August 31, 1977, the parties would agree to sell the Tacoma residence. It also provided that if an offer to buy was received, Mr. Wagner had the right to purchase Mrs. Wagner's one–half interest on the same terms and conditions within 30 days. The second part provided, however, that if the property was not sold prior to August 31, 1977, Mr. Wagner had the option of purchasing Mrs. Wagner's interest for $87,500, provided that he exercised it within 60 days after August 31.

We agree with the trial judge that the agreement is ambiguous on its face. However, the parties resolved that

ambiguity by agreeing prior to August 31, 1977, to sell the property. Since the agreement to sell extended past August 31, the parties became bound to proceed under the first option. Mr. Wagner thus had the choice of either dividing the proceeds equally or exercising his right of first refusal. We conclude that the trial judge correctly ruled that Mr. Wagner could not elect to purchase Mrs. Wagner's interest for $87,500.

In view of the foregoing, we need not reach the other issues raised by the parties.

Affirmed.

CALLOW, C.J., and WILLIAMS, J., concur.

Reconsideration denied March 25, 1980.

Review granted by Supreme Court June 18, 1980.