STATE of Alaska, Appellant,

v.

FAIRBANKS NORTH STAR BOROUGH
SCHOOL DISTRICT and Unigard In-
surance Company, Inc., Appellees.

No. 4477.

Supreme Court of Alaska.

Jan. 9, 1981.

**1330**

Henry J. Camarot and Randolph W. Hunter, Merdes, Schaible, Staley & DeLisio, Inc., Anchorage, for appellant.

Dennis M. Bump, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, and Jerome Downs, Thornton, Taylor & Downs, San Francisco, Cal., for appellees.

Before RABINOWITZ, C. J., CONNOR, BURKE and MATTHEWS, JJ., and DI-MOND, Senior Justice.

## OPINION

DIMOND, Senior Justice.

This case involves the question of who bears the loss resulting from the fire destruction of Chena School.

Chena School is located in Fort Wainwright, a military reservation. Pursuant to a use permit from the United States Department of Health, Education and Welfare (HEW), the Alaska State-Operated School System, an agency of the state, began operating Chena School and other Fort Wainwright schools in 1973.

In 1975, the Alaska legislature amended AS 14.12.020(a), AS 29.33.050, and AS 29.-41.010(a) to provide that the Alaska Department of Education could require a city or borough school district to operate military reservation schools under AS 14.14.110. Act of March 15, 1975, ch. 13, SLA 1975. As amended in 1975 (ch. 13, § 3, SLA 1975), AS 14.14.110 provides that the Department of Education may prescribe the terms and conditions of contracts between the state and local districts for the operation of schools on military reservations. Nothing

in the legislature's 1975 amendments requires local school districts that take over operation of military reservation schools to assume any risk of loss or duty to insure school buildings. Ch. 13, SLA 1975.

Pursuant to AS 14.14.110 and 14.12.020, the Department of Education executed a contract with the Fairbanks North Star Borough School District (hereafter "district") on May 20, 1975. That contract, which was effective July 1, 1975, provided in general for the operation of the Fort Wainwright military reservation schools by the district, but did not specify any duty of the district to insure or restore the schools in case of fire.

The Chena School was totally destroyed by fire on July 6, 1975. The state has since reconstructed the Chena School in order to fulfill its contractual obligations to HEW.

The state initiated an action against the district and the district's property insurer, the Unigard Insurance Company (hereafter referred to collectively as "the defendants"), seeking reimbursement for the cost of the school's reconstruction. The complaint sets forth claims based on the contract between the state and the district as well as claims alleging negligence by the district.

The defendants made a motion for partial summary judgment on the state's contractual claims. The state filed a cross-motion for summary judgment on both the contract and tort claims. The superior court granted the defendants' motion for partial summary judgment and denied the state's cross-motion for summary judgment. Accordingly, the court dismissed Counts I, II, III, IV, VI, and VIII of the state's complaint and dismissed Unigard as a party. The tort claims were identified by the court as Counts V and VII and these counts were not dismissed. The state appeals from the partial summary judgment against it but not from denial of its cross-motion for summary judgment.[1]

---

1. Pursuant to Civil Rule 54(b), the superior court found that there was no just reason for

delay in entering final judgment.

As this court has frequently stated when motion for summary judgment is made, "The burden is on the party requesting summary judgment [here, defendants Unigard and the district] to show, by evidence which would be admissible if presented at trial, that there exists no genuine issue of material fact and that [such party] is entitled to judgment as a matter of law." *Wickwire v. McFadden,* 576 P.2d 986, 987 (Alaska 1978). "To avoid summary judgment, once the moving party meets its burden, the non-moving party must produce competent evidence showing that there are issues of material fact to be tried. . . . The court then must draw all reasonable inferences in favor of the nonmoving party and against the movant." *Totem Marine Tug & Barge, Inc. v. Alyeska Pipeline Service Co.,* 584 P.2d 15, 24 (Alaska 1978). Summary judgment should be denied if genuine issues of material fact exist. *E. G., id.* at 19–20.

We hold that the state has failed to raise a genuine issue of material fact with respect to its contractual claims against the district and that the trial court correctly resolved the questions of law involved in the interpretation of the parties' contract. We therefore affirm the summary judgment order and the dismissal of Counts I, II, III, IV and VII of the complaint. Because we find that Count VI of the complaint raises issues concerning the state's tort claim against the district, we hold that Count VI was improperly dismissed.

The state first contends that there is a genuine issue of material fact with respect to whether its contract with the district imposed on the district a duty to insure Chena School against property damage or to restore it in case of property damage. The state's contractual claim rests entirely on the written contract between the state and the district, providing for operation by the district of the schools on the Eielson Air Force Base and Fort Wainwright Military Reservation.[2]

■ Relying on *Howarth v. First National Bank,* 596 P.2d 1164 (Alaska 1979), the state argues that the question of whether the parties' contract imposes a duty to insure is an issue of fact in this case. The state's reliance on *Howarth* is misplaced. In *Howarth,* we held that the lower court erred in directing a verdict for the defendant because we found that the plaintiff had presented sufficient evidence of an oral contract by which the defendant allegedly agreed to procure insurance. *Id.* at 1166–67. In the present case, however, the state admits that property insurance for the schools was not discussed between representatives of the district and representatives of the state prior to the fire on July 6, 1975, and does not contend that there was an oral contract by which the district became obligated to procure insurance for the on-base schools.[3] A genuine issue of material fact could exist in this case only if the words of the written contract could be reasonably interpreted as imposing on the district a duty to insure or restore Chena School,[4] and if there is some dispute relating to the surrounding circumstances which bears on the parties' intent.[5]

---

2. The state also seems to argue that an issue of fact is created by the statutes authorizing the state to require borough school districts to operate military reservation schools, AS 14.12.020 and 14.14.110. Such an argument is totally without merit. Interpretation of statutes is a question for the court, not the jury.

3. The state argues that it need not identify contractual language, oral or written, creating a duty to restore or insure. Apparently the state ignores the principle that a "requirement of an enforceable contract [is] that mutual assent to its terms must exist." *Howarth v. First Nat'l Bk.,* 596 P.2d 1164, 1167 (Alaska 1979).

4. A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations. *U. S. Fire Ins. Co. v. Colver,* 600 P.2d 1, 3 (Alaska 1979); *Modern Constr., Inc. v. Barce, Inc.,* 556 P.2d 528, 529 (Alaska 1976).

5. "[T]he interpretation of words [in a contract] is a matter for the court, while resolution of a dispute as to the surrounding circumstances is for the trier of fact." *Tsakres v. Owens,* 561 P.2d 1218, 1222 (Alaska 1977). In some cases we have held that because the written agreement was ambiguous on an aspect of the parties' intent, the issue was inappropriate for resolution by summary judgment. *See, e. g., Smalley v. Juneau Clinic Bldg. Corp.,* 493 P.2d

In arguing that the written contract can be reasonably interpreted as imposing on the district a duty to insure or restore, the state relies on the purpose of the contract as well as two of its clauses, Paragraph IV–D and Paragraph IV–E. The purpose of the parties' contract, as set forth in its Preamble,[6] was to transfer responsibility for the operation of Chena School from the state to the district. The state argues that the district necessarily agreed to obtain insurance for the school because this is one of the responsibilities of operating a school. The state further argues that the circumstances surrounding the formation of the contract indicate that the parties intended the district to assume this obligation and, therefore, a material issue of fact exists as to whether the district had a duty to obtain insurance.

■ We cannot agree. The evidence which the state relies upon indicates, at best, that the district was concerned about the issue of insurance, and not that the parties intended the district to obtain insurance. Thus, we find no material issue of fact to be determined. Whether or not the contract's Preamble can be interpreted to mean that the district assumed the obligation of obtaining insurance for the school is a question of law which this court can resolve without regard to the trial court's interpretation. *Tsakres v. Owens*, 561 P.2d 1218, 1222 (Alaska 1977).

■ We do not believe that the language stating that the operation of Chena School is transferred from the state to the district can be construed in the fashion the state proposes. It would be unreasonable

to assume that a transferee such as the district agreed to obtain insurance for the benefit of the transferor, without an express provision to this effect in the contract. Only reasonable terms can be supplied to a contract which is silent on the particular matter in question. *Rego v. Decker*, 482 P.2d 834, 837–38 (Alaska 1971). If the contract can reasonably be interpreted as imposing a duty on the district to obtain insurance, it must be because an express provision in the contract is susceptible to this interpretation. We therefore now examine the clauses which the state relies upon for this argument.

Paragraph IV–D provides:

D. *CONTRACTUAL RIGHTS AND LIABILITIES* —With respect to the operation of the on-base schools after July 1, 1975, the School District is the successor to the contractual rights and liabilities of the Alaska State Operated School System not otherwise addressed in this contract *of which it is aware at the time of signing of the contract.* See Appendix B, attached and incorporated by reference into this document. [Emphasis added.]

Under the use permit from HEW for school facilities located on the Fort Wainwright military reservation, the state assumed a duty to insure or restore school buildings in case of fire.[7] The state argues that Paragraph IV–D transferred that contractual duty from the state to the district. Because the clause could reasonably be interpreted in this fashion, it is necessary to determine whether this was what the par-

---

1296, 1305 (Alaska 1972). We have also held: "Where the facts relating to surrounding circumstances are not in dispute, interpretation of the words of the contract is treated in the same manner as questions of law ...." *National Bank of Alaska v. J. B. L. & K. of Alaska, Inc.*, 546 P.2d 579, 586 (Alaska 1976).

6. The Preamble states, in relevant part:
   This is a contract providing for the operation of the schools on the ... Fort Wainwright Military Reservation ... by the Fairbanks North Star Borough School District ....

7. Specifically the permit provides that the state has the responsibility for "repair or reconstruction due to damage occasioned by any risk, such as fire ..., to which the Property is exposed." "Property" is defined to include "all school buildings and other facilities located on ... Fort Wainwright, Alaska, ... together with all equipment, furnishings, and appurtenances installed therein or located thereon on the date of this permit or thereafter provided by the [U.S.] Commissioner [of Education]." The permit also required the state to procure such insurance for the property "as the Commissioner [of Education] may require."

ties intended. We conclude that there is no evidence supporting this interpretation.

The defendants produced affidavits and deposition testimony which established that the district was not aware, at the time the contract was signed, of the state's duty to insure Chena School or restore it in case of fire. Specifically, the president of the district's school board and the district's attorney, both of whom signed the contract on the district's behalf, said that the HEW use permits were never attached to the contract, that the district had never seen the use permits, and that the district had not been aware of any contractual obligation by the state to insure Chena School or restore it in case of fire. The district's business manager testified that during the contract negotiations district officials asked to see the use permits, but were told that the use permits were not available. According to the business manager, the state's only statement to district officials about the use permits was that they were agreements between the federal government and the state on how the facilities would be operated and who was responsible for various portions of the facilities' operation.

■ This evidence met the district's burden of showing there was no issue of material fact with respect to Paragraph IV–D, because under that paragraph the district's assumption of the state's contractual liabilities was expressly conditioned on the district's awareness of those liabilities at the time of the signing of the contract. The state offers no evidence that any officer, agent, or employee of the district was

aware[8] of the state's contractual obligation to restore or insure Chena School.[9] Therefore, the state has failed to raise a genuine issue of fact regarding interpretation or application of Paragraph IV–D.

The other part of the contract on which the state relies is Paragraph IV–E. It provides:

> E. *HOLD HARMLESS*—The School District shall hold the DEPARTMENT harmless from liability or judgment resulting from any act or omission of the School District, its agents, servants or employees arising from the operation of or preparation for the operation of the on-base schools after the effective date of this contract. The DEPARTMENT shall hold the School District harmless from liability or judgment resulting from any act or omission of the DEPARTMENT, its officers, agents, servants or employees arising from the operation of the on-base schools prior to July 1, 1975.

■ The state argues that the hold harmless clause created a duty by the district to place fire insurance on the on-base schools, including Chena School. This argument is without merit. The state fails to explain how the terms of this clause could be interpreted as imposing on the district a duty to insure.[10] Further, the state has offered no extrinsic evidence from circumstances surrounding the contract which might raise issues of material fact concerning the parties' intent with respect to the hold harmless clause.[11] *See Wessels v. State,* 562 P.2d 1042, 1046 n. 9 (Alaska 1977).

8. The state offers no extrinsic evidence indicating that "aware" was intended by the parties to carry anything but its ordinary meaning. Deposition testimony by state officials supports the view that the purpose of the awareness clause was to prevent district liability resulting from contracts district officials had not seen.

9. The state cites evidence that the district staff was concerned with insurance responsibility, but does not explain the relevance of this evidence. None of this evidence supports an inference that district officials were aware at the time of the contract's signing (May 20, 1975) of the state's duty to insure or restore Chena School in case of fire.

10. *Manson-Osberg Co. v. State,* 552 P.2d 654 (Alaska 1976), on which the state relies, does not support the argument that Paragraph IV–E created a duty to secure property insurance. Only an act or omission by the district causing liability of the state triggers the district's duty to indemnify. The state's liability to HEW was caused by the fire, not by the district's failure to insure. Therefore, the district's failure to secure property insurance for Chena School does not trigger the duty to indemnify.

11. The state has conceded that during negotiation of the contract there were no direct discussions between the parties regarding responsibilities for property insurance.

The state has thus failed to establish under the terms of the contract any genuine issues of material fact with respect to a duty of the district to insure or restore Chena School. However, the hold harmless clause can reasonably be interpreted as imposing on the district a duty to insure or restore Chena School if it were damaged or destroyed through the district's negligence.

■ Count VI of the state's complaint paraphrases this hold harmless clause, then alleges that the district "failed to take reasonable measures to safeguard Chena School against fire damage" and that the failure resulted in the state's liability to HEW in an amount over $1.6 million. Finally, the state alleges in Count VI that the district's failure to indemnify the state in accordance with the hold harmless clause has damaged the state in excess of $1.6 million.

In moving for partial summary judgment, the defendants did not attempt to establish that there was no issue of material fact with respect to the negligence of the district or its agents, servants, or employees. The superior court's order declared that the state's tort claim "remains in an active status," but identified that claim only as Counts V and VII.

If, as alleged in Count VI, the district's negligence caused the fire damage, the district would be liable under the hold harmless clause to indemnify the state for the latter's liability to HEW. Potential issues of material fact with respect to Count VI relate to the district's alleged negligence. Dismissal of Count VI was, therefore, error.

■ The state next contends that, even if its duty to insure or restore Chena School in case of fire was never transferred to the district, the superior court's dismissal of Unigard was error because the state should still be allowed to recover directly under the district's policy of insurance. The state's argument that the Unigard policy by its terms, inures to the benefit of the state is without merit.[12] Furthermore, the state identifies no evidence from the surrounding circumstances which creates a factual dispute affecting interpretation of the Unigard policy. Therefore, its argument that there exits an issue of material fact with respect to its claims against Unigard fails. *See Wessels v. State*, 562 P.2d 1042, 1046 n. 9 (Alaska 1977); *Tsakres v. Owens*, 561 P.2d 1218, 1222 (Alaska 1977).

The final issue on appeal is whether the award of attorney's fees to the defendants was improper.

Defendants were entitled to attorney's fees under Civil Rule 82 because they prevailed on their motion for summary judgment. Defendants' counsel submitted itemized billings showing that total attorney's fees were approximately $57,000. An affidavit by local counsel for the defendants states that it rendered professional services in excess of $30,638.50. The same affidavit states that a San Francisco firm which acted as co-counsel rendered professional services of $26,375.50.

In their motion for attorney's fees, defendants requested an award of only about $22,000. The superior court recognized that total fees were $57,000, and awarded $37,000.00 as partial compensation.

12. Basically, the state seems to be arguing that Unigard should pay the state solely because the district had a blanket property insurance policy from Unigard. The district's property insurance policy from Unigard was a blanket policy which covered all property for which the district was liable or had assumed liability prior to loss. Neither the state nor Chena School was mentioned in the policy. We have determined that the district had no duty to procure insurance for Chena School and was not liable for its restoration under the terms of the contract between the district and the state.

The decisions relied on by the state, in which a bailor of personal property recovered under the bailee's insurance, are inapplicable. In those cases the policies expressly limited their coverage to property specifically described in the policies. *Hagan v. Scottish Union & Nat'l Ins. Co.*, 186 U.S. 423, 424, 22 S.Ct. 862, 863, 46 L.Ed. 1229, 1230 (1902); *California Ins. Co. v. Union Compress Co.*, 133 U.S. 387, 10 S.Ct. 365, 33 L.Ed. 730, 732 (1890); *United States v. Globe & Rutgers Fire Ins. Co.*, 104 F.Supp. 632, 633 (N.D.Tex.1952); *Ins. Co. of North America v. United States*, 65 F.Supp. 401, 402 (W.D.S.C. 1946), aff'd, 159 F.2d 699 (4th Cir. 1947); *Pacific Fire Ins. Co. v. Murdoch Cotton Co.*, 99 S.W.2d 233, 234 (Ark.1936).

As has often been stated by this court, "[T]he purpose of Rule 82 is to partially compensate a prevailing party for the expenses incurred in winning his case." *Tobeluk v. Lind*, 589 P.2d 873, 876 (Alaska 1979). "The power to award costs and attorney's fees lies within the discretion of the trial courts and will not be interfered with unless there is a clear abuse of discretion." *State v. Alaska International Air, Inc.*, 562 P.2d 1064, 1067 (Alaska 1977).

We reject the state's argument that the superior court abused its discretion by awarding fees in excess of the amount requested. Civil Rule 82 does not require the superior court to limit its award to the amount requested.

The state also contends that the award was improper because it exceeded the amount of fees incurred by local counsel. The state contends that "the record amply demonstrates" that the two firms employed by the defendants performed the same professional services. We agree that, to the extent that work performed is duplicative and unnecessary, it should not be considered in determining a proper award under Civil Rule 82. However, the state fails to give any examples of duplicative and unnecessary services, by record citation or otherwise. Therefore, the state has failed to meet its burden of showing a clear abuse of discretion by the superior court.

The order of the superior court is AFFIRMED in part and REVERSED in part.

BOOCHEVER, J., not participating.