**ALASKA STATE FEDERATION OF LABOR and Michael Culich,
Appellants,**

v.

**STATE of Alaska, DEPARTMENT OF LABOR, Department of Community and Regional Affairs, the Alaska Native Brotherhood, and Mountain Pacific, Inc., Appellees,**

and

**Tlingit-Haida and Alaska Native Brotherhood Building Corporation,
Intervenors, Appellees.**

**No. S–588.**

Supreme Court of Alaska.

Jan. 31, 1986.

Fredric R. Dichter, Dichter & Ploog, Anchorage, for appellants.

Pamela Finley and James B. Bradley, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellees.

Stephen J. Pearson, Juneau, for intervenors, appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

BURKE, Justice.

The Alaska State Federation of Labor (Federation) and Michael Culich filed an action in the superior court against Mountain Pacific, Inc. for declaratory and injunctive relief, alleging that a Juneau construction project was "public construction," subject to the wage requirements of Alaska's Little Davis-Bacon Act (Act), AS 36.05.[1] Both sides moved for summary judgment. The superior court ruled that the project was not "public construction," and granted summary judgment in favor of the defendants; the plaintiffs' motion for summary judgment was denied and their complaint was dismissed with prejudice. Plaintiffs appeal.

## I. FACTS AND PROCEEDINGS BELOW

The Alaska Native Brotherhood (ANB) applied for and received a $1,000,000 State grant from the Department of Community and Regional Affairs (CRA) for the construction of a community hall in Juneau. ANB subsequently reached an agreement with the Central Council of Tlingit and Haida Indian Tribes of Alaska (THCC) to combine their resources and build a larger

complex, financed by the original $1,000,-000 grant to ANB and additional private financing of approximately $3,000,000. CRA approved this plan, and THCC and ANB created the Tlingit-Haida and Alaska Native Brotherhood Building Corporation (TH/ANB) to complete the project.

A construction contract was entered into between TH/ANB and defendant, Mountain Pacific, and work commenced on April 1, 1983. Although neither the CRA grant nor the construction contract made specific reference to AS 36.05, the Department of Labor informed Mountain Pacific on April 18, 1983, that the Act applied to the project. In order to begin enforcement of the Act's requirements, the Department of Labor scheduled a hearing with Mountain Pacific for May 27, 1983.

On May 23, 1983, the attorney general issued an opinion that the construction in question was not "public construction." The following day, the Department of Labor informed Mountain Pacific: "Based upon the Attorney General's opinion that the ... project is not covered under Title 36, the ... hearing scheduled for May 27, 1983 is hereby cancelled." The State made no further attempt to enforce AS 36.05, and the plaintiffs filed suit.

Following an unsuccessful attempt by the plaintiffs to obtain a temporary restraining order, the parties filed their respective motions for summary judgment. On June 18, 1984, the superior court issued its Memorandum of Decision and Order, granting the defendants' motion and dismissing the plaintiff's complaint with prejudice.

## II. APPLICATION OF ALASKA'S LITTLE DAVIS–BACON ACT (AS 36.05).

The plaintiffs contend that construction of the community hall was covered by AS 36.05 because the project was "public

---

**1.** AS 36.05 is modeled after the Federal Davis-Bacon Act 40 U.S.C. § 276a *et seq.* *Fowler v. City of Anchorage,* 583 P.2d 817 (Alaska 1978). The fundamental purpose of the Act is to assure that employees engaged in public construction receive at least the prevailing wage. *City of Sitka v. Construction & General Laborers Local 942,* 644 P.2d 227 (Alaska 1982).

construction" as defined in AS 36.95.010(3). That section provides:

"public construction" or "public works" means the on-site field surveying, erection, rehabilitation, alteration, extension or repair, including painting or redecorating of buildings, highways or other improvements to real property under contract for the state, a political subdivision of the state, or a regional school board with respect to an educational facility under AS 14.08.161.

Specifically at issue here is the meaning of "under contract for the state." Plaintiffs argue, in essence, that the phrase should encompass any contract with the state in which a substantial expenditure of state monies is involved. Therefore, plaintiffs contend, since the state contributed grant monies to ANB, through a contract for the construction of the ANB community hall, the provisions of AS 36.05 apply. We disagree.

Relevant to our determination of this issue are: (1) the history of the ANB grant and the contract between CRA and ANB; (2) the sources and amounts of funding; and (3) Alaska case law.

### 1. History of the Grant and the Contract Between CRA and ANB

In 1972, the state established the Department of Community and Regional Affairs to "render maximum state assistance to government at the community and regional level." AS 44.47.020, ch. 200, § 2, SLA 1972. The CRA is authorized to "conduct studies and carry out experimental and pilot projects for the purpose of developing solutions to community and regional problems." AS 44.47.050(3). The legislature appropriated $1,279,000 to CRA for "Juneau-Pilot Projects/Community Centers." See Ch. 82, § 30, SLA 1981, p. 158.

Pursuant to this grant and subsection (3), the CRA prepared and published a Request for Proposals (RFP) for grant monies. The RFP stated that the intent of the legislature in providing state funding for the project was to contract with the Alaska Native Brotherhood Camp No. 2 to build a new Alaska Native Brotherhood Hall. A review of the ANB bid proposal reveals that the hall would serve as ANB headquarters and as its executive offices. Furthermore, all ANB activities took priority; any public use would be on a limited basis for a fee, as scheduling permitted.

ANB and CRA entered into a contract outlining the duties and responsibilities of ANB in using the grant money. This grant contract was "for the construction and operation of a new Alaska Native Brotherhood Hall." ANB would be responsible for: (1) proper accounting of state funds; (2) acquiring land for a building site in the Juneau village area; (3) contracting and working with architects and engineers to design the hall; (4) hiring contractors and working with them to complete the hall; (5) establishing the uses of the hall and providing those services.

Alaska's Little Davis-Bacon Act refers in numerous sections to a "construction contract." See AS 36.05.035; AS 36.05.040; AS 36.05.070. The Act clearly envisions contracts between the state or a political subdivision, and a contractor for the construction of a specified public project. See generally AS 36.05. Plaintiffs maintain that this is such a project. We disagree. The contract is specifically labeled "grant contract." Its purpose was the disbursement of grant monies. The responsibilities of ANB were to guarantee the state that the grant money would be spent on the building project specified in the grant.

While the Federation is correct in asserting that the hall must be used for a public purpose on a nondiscriminatory basis, there is no indication in the record that the state ever intended to retain control over or fund the hall upon its completion. The contract between ANB and the state contains no express Little Davis-Bacon stipulation as required by AS 36.05.070, even though the state did include requirements that ANB advertise as an equal opportunity employer. We find no support for the Federation's argument that this was a construction contract for the state.

## 2. *Funding*

The Federation maintains that the use of any state funds exceeding $2,000 in a construction project should result in the application of AS 36.05. Specifically, the Federation maintains that the community hall was ninety-nine percent funded by state monies, and that the expanded project (the TH/ANB building) was not approved by CRA until after the grant contract was signed.

The superior court concluded that the state's contribution to the project was twenty-five percent, rather than ninety-nine percent as the Federation argues. The court noted that under the federal act, construction projects receiving *any* government funding are public construction, but that Little Davis-Bacon's definition of public construction precluded a similar result.[2] The court stated:

> If the legislature had intended the act to apply to all state funded projects, it could easily have stated so in the definition of "public construction." Its failure to do so suggests that it did not intend such a broad application. The Department of Labor's decision not to adopt such a broad reading of the term "public construction" appears correct.

Consequently, the court concluded that the Federation's broad interpretation of the statute was incorrect. We agree.

The record does not substantiate the Federation's claim that the building was being constructed for, or would be owned by, the state. In fact, the record indicates that the ANB would be responsible for and have control over the construction and operation of the building. Finally, CRA did approve the joint project in which seventy-five percent of the funding would be from private rather than public sources. As a result, we find no support for the Federation's contention that the project was primarily state funded.

## 3. *Alaska Case Law*

The Federation relies upon our decision in *City and Borough of Sitka v. Construction and General Laborers Local 942*, 644 P.2d 227 (Alaska 1982), a case in which we held that the clearing of timber in preparation for the construction of a dam was public construction subject to the wage provisions of the Act.

The question in *Sitka* was whether one part of a construction project (the timber clearing) was sufficiently related to another part of the project that was clearly public construction (construction of the dam), so as to render both "public construction" for purposes of the Act.[3] Consequently, the *Sitka* case must be distinguished from the present case, as there is no established public construction project with which to relate the project at issue.

We conclude that the state never owned or controlled, nor intended to own or control the ANB community hall. The project was not public construction. The Act defines public construction as construction "under contract for the state." This requires significant state involvement. The evidence, however, shows that the project was intended primarily for private purposes and private control. State involvement was indirect—funding through a grant—and relatively small—only about twenty-five percent of the total cost. Thus, we affirm the superior court.

## III. ATTORNEY'S FEES.

██ On October 5, 1984, the superior court awarded the appellees the following costs and attorney's fees pursuant to Civil Rule 82:[4] $8,700 to Mountain Pacific;

---

2. The legislature could, of course, require that all projects receiving state funds comply with AS 36.05.

3. The court noted that:
   > Once a sufficient nexus has been established between a contract *and a public construction project,* we may look to the value of the entire endeavor to ascertain if the $2,000 threshold requirement has been satisfied.

   *Id.* at 233 n. 12 (emphasis added).

4. Alaska R.Civ.P. 82(a)(2) reads:
   > In actions where the money judgment is not an accurate criteria for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the

$5,550 to TH/ANB; $750 to ANB; and nothing to the State of Alaska. The Federation contests the superior court's award of attorney's fees charging that its appeal was public interest litigation, and that much of the work done by appellees' attorney's was duplicative.

Civil Rule 82 gives trial courts broad discretion to award attorney's fees, and such an award is reviewable only for an abuse of discretion. *Kenai Lumber Co. v. LeResche*, 646 P.2d 215, 222 (Alaska 1982). In order to constitute abuse, the discretion must be "manifestly unreasonable or motivated by an inappropriate purpose." *Id.* We find that the superior court did not abuse its discretion in awarding attorney's fees.

The Federation maintains that it is a public interest litigant, motivated by a desire to see a statutory provision enforced for the benefit of all Alaskan workers. We have identified four factors for determining whether a case qualifies as public interest litigation: (1) the effectuation of strong public policy; (2) the fact that numerous people would benefit from the litigation; (3) the fact that only a private party could have been expected to bring the action, and (4) the lack of economic incentives to bring the suit in the absence of important public issues. *Sisters of Providence in Washington, Inc. v. Department of Health and Social Services*, 648 P.2d 970, 979–80 (Alaska 1982).

The standard to be applied under the fourth element of the test was set forth by our decision in *Kenai* as

> [W]hether the litigant claiming public interest status would have sufficient economic incentive to bring the lawsuit even if it involved only narrow issues lacking general importance. Such a litigant is less apt than a party lacking this incentive to be deterred from bringing a good faith claim by the prospect of an adverse award of attorney's fees.

amount and value of the legal services rendered.

646 P.2d at 223. While enforcement of the Act would benefit Alaskan laborers generally, it would specifically benefit the member unions of the Federation. Consequently, we conclude that the Federation was motivated principally by private rather than public concerns; hence, the superior court's award was not an abuse of discretion.

■ Furthermore, we find no merit in the Federation's claim that work done by appellees' attorneys was duplicative and excessive. The Federation misplaces its reliance on *State v. Fairbanks North Star Borough School District*, 621 P.2d 1329 (Alaska 1981), a case in which we stated:

> We agree that, to the extent that work performed is duplicative and unnecessary, it should not be considered in determining a proper award under Civil Rule 82. However, the state fails to give any examples of duplicative and unnecessary services, by record citation or otherwise. Therefore, the state has failed to meet its burden of showing a clear abuse of discretion by the superior court.

*Id.* at 1335.

Here, as in *Fairbanks North Star Borough*, the Federation offers no evidence of duplication by the appellees. As a result, their assertion is unsupported.

## IV. CONCLUSION.

Based upon our findings above, all portions of the superior court's decision are AFFIRMED, including the award of attorney's fees.[5]

---

5. Because of this decision we need not address other issues raised by the parties.