**Thomas H. KEFFER, Appellant,**

v.

**Gypsy KEFFER, Appellee.**

No. S–4699.

Supreme Court of Alaska.

May 14, 1993.

Phil N. Nash, Kenai, for appellant.

Helen L. Simpson, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

The superior court held that a financial agreement Thomas Keffer and Gypsy Keffer entered into when they petitioned to dissolve their marriage provided for permanent spousal support, terminable only on Gypsy's death or remarriage. The court rejected Thomas' argument that his obligation to pay support terminated upon his retirement. Thomas appeals the superior court's decision to award Gypsy continuing spousal support until her death or remarriage, and $1,500 in attorney's fees. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Thomas' and Gypsy's marriage was dissolved in 1984 after 26 years of marriage. In their petition for dissolution,[1] they agreed to the following:

E. Spousal Support: $400.00 per month to be paid by [Thomas] until sale of house, retroactive to 1–1–84.

F. Other Financial Agreements: After Sale of House. Combined net annual salaries, less Gypsy L. Keffer's net annual salary divided by 24 is the amount Thomas H. Keffer will pay her twice a month. Income earned outside of primary place of employment will not be included in this calculation. (See section IIA for current amounts. These amounts to be adjusted annually to reflect the increase/decrease in Anchorage area CPI @ October).

The above formula was obviously incorrect, since it would give Gypsy all of Thomas' net salary.[2] It was never applied.

After filing the petition, but before the dissolution hearing, Thomas agreed to pay Gypsy support of $540 twice a month. This figure was calculated by dividing Thomas' annual salary by two, subtracting Gypsy's annual salary, and dividing the remainder by 24.[3] Apparently this is the formula they intended. Gypsy concedes as much. Gypsy would not agree to a specific termination date for support, although Thomas wanted one. Neither testified to any other financial arrangements.

Gypsy appeared at the dissolution hearing alone. Thomas signed a Waiver of Appearance and Notice of Hearing. The court found that Thomas and Gypsy fully understood the nature and consequences of the action and that the agreements were fair. The court incorporated the agreements in the petition into its findings. In its decree it ordered Thomas and Gypsy to perform their agreements as incorporated in the findings.

Thomas made the payments, recalculating them to reflect changes in his actual income and CPI. Thomas continued to use a $675 per month figure for Gypsy's income, regardless of her actual net income.

---

1. Although neither Thomas nor Gypsy was represented by counsel in the dissolution proceeding, Gypsy apparently received legal advice through Women's Services in Homer.

2. If Thomas' net annual salary were $100,000 and Gypsy's $10,000, their combined salaries would be $110,000. Subtracting her salary would leave $100,000. $100,000 divided by 24 is $4,166.67. $4,166.67 twice a month times 12 months is $100,000 per year, all of Thomas' net annual salary.

3. Thomas expressed the calculation as follows:

| | |
|---|---|
| My monthly net income of $3,510.54 × 12 | = $42,126.48 |
| My yearly divided in ½ | = 21,063.24 |
| Less her monthly net of $675 × 12 | = (8,100.00) |
| Yearly amount necessary to equalize my income with hers | = 12,963.34 |
| Amount for each of my 24 pay periods at that rate of pay | = 540.00 |

In 1986 Thomas sought to terminate the payments. The basis for his motion was that Gypsy was not attempting to rehabilitate herself, which he claimed was the reason for the spousal support. His motion was denied.

Thomas' job with Homer Electric Association was eliminated on December 31, 1989. Since Thomas was over age 55, he was eligible for retirement benefits. He cashed in his retirement, worth $240,558, in 1990. With an estimated tax liability of $44,718, his net retirement was $195,840. He reinvested the funds, and is living off of the interest. His interest income is approximately $1,175 per month. He sent the last check to Gypsy in January 1990.[4]

Gypsy filed a Motion for Order for Delinquency in Alimony and for Qualified Domestic Relations Order. The superior court ordered Thomas to make two interim payments, one of $2,700 on October 11, 1990 and one of $3,947.16 on January 7, 1991.[5] In its final order, the court concluded that the agreement reached in 1984 was for permanent spousal support and that Thomas' voluntary retirement should not alter his obligation to Gypsy. The court reduced the spousal support award to a sum certain of "$1,000 per month for life or until [Gypsy] remarries," and awarded Gypsy $1,500 in attorney's fees.

## II. DISCUSSION

■ Under AS 25.24.200–.260, a "husband and wife together may petition the superior court for the dissolution of their marriage." AS 25.24.200. The dissolution procedure is separate from the traditional divorce procedure, which automatically places the parties in an adversarial position. In providing a dissolution procedure, the legislature intended that the parties involved would be able to resolve their differences amicably and in their own way.

*Dissolution of Marriage,* H.B. 873, House Judiciary Committee (March 19, 1976).

Where "incompatibility of temperament has caused the irremediable breakdown of the marriage," and the spouses have agreed on child custody and support, property distribution and spousal support, if any, and the payment of debts, spouses may petition for the dissolution of their marriage. AS 25.24.200(a). The petition must state, *inter alia,* "in detail the terms of the agreement between the spouses concerning ... spousal maintenance and tax consequences, if any, and fair and just division of property, including retirement benefits." AS 25.24.210(e). At the dissolution hearing, the superior court determines whether the written agreements relating to property division, spousal maintenance and the allocation of obligations are just and fair. AS 25.24.220(d)(3). If so, the court may grant a final decree of dissolution. AS 25.24.230.

The decree "may be modified or enlarged as prescribed by AS 25.24.150–25.24.170." AS 25.24.240(b). Alaska Statute 25.24.170 provides for modification of spousal support, but not for property divisions incorporated within divorce decrees.[6]  *O'Link v. O'Link,* 632 P.2d 225, 229 (Alaska 1981). "A property division incorporated within a divorce decree is a final judgment and is modifiable to the same extent as any equitable decree of the court." *Id.* "The provisions of a decree adjudicating property rights, unlike provisions for child support, child custody or alimony, constitute a final judgment not subject to modification." *Allen v. Allen,* 645 P.2d 774, 776 (Alaska 1982) (footnote omitted). Neither Thomas nor Gypsy argue that relief may be granted under Alaska Civil Rule 60(b), which provides for relief from a final judgment.

---

**4.** Since 1984, Gypsy had received $72,078.54.

**5.** The superior court arguably erred in ordering interim payments instead of a judgment for the full amount. However, Thomas has waived the money paid to Gypsy under the interim orders, having concluded that it is not realistically recoverable.

**6.** AS 25.24.170 provides:

[A]ny time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony, ... or for the maintenance of either party to the action.

■ Where a support provision is an integral part of the property settlement, courts generally hold that the support provision is not subject to later modification. John J. Michalik, Annotation, *Divorce: Power of Court to Modify Decree for Alimony or Support of Spouse Which Was Based on Agreement of Parties*, 61 A.L.R. 520, 590 (1975); *see, e.g., Keller v. Keller*, 137 Ariz. 447, 671 P.2d 425, 426 (App.1983) (alimony given in exchange for release of wife's community property interest in a retirement fund not subject to modification).

Thomas and Gypsy agree that Gypsy voluntarily gave up any claim she had to Thomas' retirement in exchange for payments based on their salaries. Thomas testified that Gypsy told him she was letting him off light by having him pay her support since she could have gone after his retirement. Gypsy testified by affidavit that "I agreed to not take any of his retirement which I would have been entitled to from the Electrical Union because we agreed that he was going to be paying me alimony." [7]

■ To the extent retirement benefits have been earned during the marriage, they constitute marital *property*. *Rice v. Rice*, 757 P.2d 60, 61 (Alaska 1988). Since Gypsy's support was based on her relinquishment of Thomas' retirement, we will enforce Thomas and Gypsy's agreement without modification.

■ Thomas and Gypsy agree that the financial agreement they entered into in connection with their dissolution of marriage proceeding is ·a contract subject to interpretation under contract principles. Thomas asserts "the principals [sic] of contract law apply to construction of property settlement agreements in divorce actions," citing *Kendler v. Kendler*, 816 P.2d 193 (Alaska 1991); *Logghe v. Jasmer*, 686 P.2d 694 (Alaska 1984); and *Estate of Kuhns v. Kuhns*, 550 P.2d 816 (Alaska 1976). Gypsy responds that she "does not dispute that the dissolution agreement is a contract and subject to interpretation by the court under contract principles." The goal in interpreting a contract is to give effect to the reasonable expectations of the parties. These expectations are determined by reviewing the language of any disputed provisions, other provisions, relevant extrinsic evidence, and case law interpreting similar provisions. *Jensen v. Ramras*, 792 P.2d 668, 670 (Alaska 1990).

■ If contract language is unambiguous, the meaning of the contract is decided as a matter of law. *Alaska Northern Dev. v. Alyeska Pipeline Serv.*, 666 P.2d 33, 39 (Alaska 1983), *cert. denied*, 464 U.S. 1041, 104 S.Ct. 706, 79 L.Ed.2d 170 (1984). "A contract is ambiguous only if, taken as a whole, it is reasonably subject to differing interpretations." *State v. Fairbanks North Star Bor. Sch. Dist.*, 621 P.2d 1329, 1331 n. 4 (Alaska 1981) (citations omitted).

Under the terms of the agreement, Thomas argues he is not obligated to Gypsy for payments derived from his investment income. The agreement refers to the parties' "combined net annual salaries" and excludes "income earned outside of primary place of employment." Thomas' only income is from interest on investments that were generated from cashing in his retirement, which is "income earned outside of primary place of employment." Curiously, Gypsy herself suggests that " 'income earned outside primary place of employment' sounds more like it is referring to a second job *or interest earnings*." (Emphasis added). This echoes Thomas' own argument.

■ It is unclear from the Final Order whether the superior court attempted to examine the intent of the parties with respect to the effect of Thomas' retirement on his obligation to pay Gypsy support.

---

**7.** At the hearing, Gypsy stepped back from her original position:

The only thing that was said was, I told him I wasn't going to ask for half of what was in his retirement fund at the time of the divorce. I knew eventually he would retire. I was trying to be nice, and I wanted him to have enough money to live comfortably, as well as keep paying me when he retired.

The record does not disclose any extrinsic evidence it might have considered if it had wanted to do so. The parties agree that Thomas wanted a specific termination date for the support, but Gypsy did not. Thomas testified that he believed retirement would terminate his obligation to make payments, while Gypsy testified that the payments were essentially permanent.

With regard to subjective intention, we have stated:

Differences of opinion among the parties as to their subjective intent, expressed during the litigation, do not establish an issue of fact regarding the parties' reasonable expectations at the time they entered into the contract, since such self-serving statements are not considered to be probative.

*Peterson v. Wirum*, 625 P.2d 866, 870 (Alaska 1981). To the extent that the parties' testimony expresses their subjective intent, it is not probative.

■ The superior court found that Thomas' "voluntary retirement" would leave Thomas in control of the amount and duration of payments. Theoretically, Thomas could have ended his obligation at any time by *quitting* his job. However, in doing so he would have violated the implied covenant of good faith and fair dealing, which applies to contracts to settle property rights just as to any other contract. A covenant of good faith and fair dealing is implied in all contracts as a matter of law. *Alaska Pacific Assur. Co. v. Collins*, 794 P.2d 936, 947 (Alaska 1990).

■ In response to a question from the court, Thomas testified:

My technical expertise is accounting and finance. I have a house in Homer that

has not sold. There aren't that many positions available in the Homer area. But physically, there are not a lot of reasons I can't get another job, no sir.

Gypsy offered no evidence that there were other employment opportunities in Homer that were available to Thomas in his line of work, or in any related line of work.

No evidence indicates that Thomas did not act in good faith. Thomas' job as an accountant with Homer Electric Association was abolished. He was eligible for retirement. He took retirement and opted to cash in his retirement account, rather than take monthly payments.[8]

The superior court implicitly found that Thomas' retirement was voluntary. This finding is clearly erroneous. Civil Rule 52(a). Thomas' job was abolished. He was eligible for retirement and took it.[9]

■ We agree with the superior court that the financial agreement provides for permanent spousal support. That does not end our inquiry. We conclude that this obligation is limited by the "primary place of employment" term. The financial agreement integrates all obligations of the parties to each other. The agreement implicitly provides that Gypsy's support is to be based on Thomas' income from employment. "Income earned outside of primary place of employment will not be included" in the support calculation. Thomas is not obligated at this time to make support payments to Gypsy under the original decree.[10]

## III. CONCLUSION

Thomas and Gypsy entered an agreement in 1984 which provided for spousal support, among other financial arrangements. Under the terms of the agreement,

---

**8.** Thomas had the option to take monthly payments of $1,200 for a fixed term of ten years, *i.e.* $144,000. Thomas testified that the retirement program was "not a very good program."

**9.** Apparently Thomas could have postponed his application for retirement benefits. However, he could not have postponed abolition of his job. In just what manner Gypsy would have

benefitted from Thomas' postponement of retirement benefits is not apparent.

**10.** At oral argument the parties' counsel seemed to agree that in any event Thomas would be required to make payments if he found another job or became self-employed, and his earnings were sufficient to satisfy the agreed upon formula. We concur.

Thomas would pay Gypsy an amount of money calculated from their net annual salaries. His salary included only what he earned from his primary place of employment. As long as Thomas, acting in good faith, is not employed, he is not obligated to support Gypsy. The superior court's order awarding Gypsy $1,000 per month for life or until she remarries is REVERSED.

Gypsy is no longer the prevailing party in the superior court. Therefore, the award of attorney's fees must be REVERSED.

RABINOWITZ, J., with whom MATTHEWS, J., joins, dissents.

RABINOWITZ, Justice, with whom MATTHEWS, Justice, joins dissenting.

I dissent from the majority's adoption and application in the instant case of the line of authority holding that: "Where a support provision is an integral part of the property settlement, courts generally hold that the support provision is not subject to later modification." My reasons are as follows:

First, the payments that Thomas was required to make to Gypsy under Section F of their dissolution agreement were in the nature of alimony payments rather than a division of property. Since the parties' dissolution agreement was incorporated in the superior court's decree these alimony provisions were subject to modification pursuant to AS 25.24.170, which provides that "any time after judgment the court, upon the motion of either party, may set aside, alter, or modify so much of the judgment as may provide for alimony ... or for the maintenance of either party to the action." We have held that a material and substantial change in circumstances generally is required to modify a support decree under AS 25.24.170. *Hinchey v. Hinchey*, 722 P.2d 949 (Alaska 1986). Given Thomas' present unemployment, the record reflects a material and substantial change of circumstances has occurred. Therefore, a remand to the superior court is now required for the purpose of requiring that court to determine, with findings, whether alimony remains appropriate and if so in what amount.

Second, the majority's opinion is based on its assumption that the spousal support and property settlement provisions were integrated. Integration in turn is grounded on the theory that spousal support was, at least in part, negotiated as a "trade off" for Thomas retaining sole ownership of his retirement pension. There is no evidence in the agreement itself as to such an integration. Instead, the only evidence of either party's intent is statements of subjective intent that are susceptible of more than one interpretation.[1] Given this record

---

**1.** Gypsy testified by affidavit that "I agreed to not take any of his retirement which I would have been entitled to from the Electrical Union because we agreed that he was going to be paying me alimony." Gypsy testified that it was her understanding that the payments would be made "[u]ntil I remarried, one of us died or I no longer wanted or needed the money." She explained: "The only thing said was, I told him I wasn't going to ask for half of what was in his retirement fund at the time of the divorce. I knew eventually he would retire. I was trying to be nice, and I wanted him to have enough money to live comfortably, as well as keep paying me when he retired." Thomas testified that Gypsy told him she was "letting [him] off this light" by not coming after his retirement, and that based on this statement, "[t]his basically

would be my understanding, that when my salary stopped, so did these payments."

At the hearing Thomas was asked the following question:
And you have figured all of these things, which she may not even really understand. Was there some reason that you didn't put in this agreement you drafted that this would end when you no longer had any income?
A portion of Thomas' response is particularly significant:
I had hoped, when I appeared before Jim Hornaday [District Court Judge], to go ahead and clarify the term of this thing, simply because this is not my realm of expertise. This is why no time was put in. Gyp didn't want one, and I was hoping that if Jim reviewed this, he would go ahead and insert one

neither the parties' testimony nor the relevant documents is sufficiently clear as to the parties' intent to justify application of "the integration doctrine".[2]

or, you know, send it back to the drawing board.

2. *See Peterson v. Peterson,* 434 N.W.2d 732, 735–36 (S.D.1989) (rejecting claim that alimony award was a disguised property settlement not subject to modification and observing that "when deciding whether an award of alimony is, in reality, a portion of a property settlement, a court must scrutinize the language of the divorce decree, the circumstances accompanying it, and the end sought to be achieved by the parties."); *Wagner v. Wagner,* 25 Wash.App. 439, 607 P.2d 1251, 1254 (1980) (holding that spousal payments provided for in a divorce decree were not an integral part of a property settlement, and therefore were subject to modification, where payments were termed alimony, payments would terminate upon the death of either party or the remarriage of the wife, and the agreement recognized that the alimony provisions were subject to the court's approval); *cf. Latham v. Latham,* 570 So.2d 694, 697 (Ala.Civ.App.1990) (declining to find property division and child support payment schedule integrated absent greater specificity regarding the parties' intent, and noting that "[a]n integrated bargain agreement between divorcing parties is evidenced by a pronounced intent to finally settle all claim of property rights and maintenance.... This intent must be more specific than that of a regular property settlement.").

In contrast, *Kiffer v. Kiffer,* 410 N.W.2d 454 (Minn.App.1987) illustrates the type of documentation that I would find adequate to establish an intent to enter an integrated agreement exchanging pension rights for alimony.• In *Kiffer,* the court properly found such an exchange where the section of the property agreement that allocated the husband's military pension rights stated: "The parties acknowledge that the alimony payments, as heretofore set forth in [the agreement], have been computed so as to compensate for Wife's interest in said pension rights arising by reason of the seventeen and one-half years of marriage during which the Husband was in the military service." *Id.* at 456.