Jerrold James WAHL, Appellant,

v.

Ilene Eloise WAHL, Appellee.

No. S–7399.

Supreme Court of Alaska.

Oct. 16, 1997.

Anthony M. Sholty, Faulkner, Banfield, Doogan & Holmes, Juneau, for Appellant.

Lisa Moritz Kirsch, Baxter, Bruce, Brand & Douglas, Juneau, for Appellee.

Before COMPTON, C.J., and MATTHEWS, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

FABE, Justice.

## I. INTRODUCTION

Jerrold Wahl challenges the superior court's decision that an agreement he signed in connection with his divorce from Ilene Wahl entitles Ilene to one-third of his retirement benefits. Jerrold also appeals the superior court's order that directs the administrator of his retirement plan to create a "survivor annuity" for Ilene to ensure that Ilene will receive her share of Jerrold's retirement benefits should Jerrold predecease her. Finally, Jerrold appeals the superior court's decision authorizing the parties' children to receive Ilene's share of the retirement benefits if she predeceases Jerrold. We affirm.

## II. FACTS AND PROCEEDINGS

Ilene and Jerrold Wahl were married in 1962 and were divorced on January 13, 1981. During their marriage, the parties had three children, all of whom are now adults. The divorce decree expressly incorporated the parties' January 5, 1981 "Property Settlement and Custody Agreement" (Divorce Agreement). Paragraph seven of the Divorce Agreement provides that "[t]he husband agrees to pay to the wife 33–1/3 percent of his retirement with the Federal government beginning on the first month in which he obtains retirement and continuing each month thereafter."

Jerrold retired from his position with the United States government on September 3, 1993. On February 14, 1994, Ilene wrote the United States Office of Personnel Management (OPM) requesting that OPM send her one-third of Jerrold's retirement pay pursuant to the terms of the divorce decree.[1]

OPM denied that request, stating that it could not pay her any portion of Jerrold's retirement benefits because the Divorce Agreement "does not direct the [OPM] to pay the former spouse."

On July 10, 1995, Ilene filed with the superior court a "Motion to Enforce Divorce Decree." In her supporting memorandum, she argued that "[t]he parties intended for Ilene to take one third of Jerrold's retirement account based on his balance when he retired." In a footnote, she explained that

> [t]he parties arrived at a one third, two thirds split in favor of Jerrold based on the estimate that Jerrold had completed 2/3 of his working career at the time of the divorce and Ilene was entitled to 1/2 of whatever he earned at the date of divorce, or 1/3 of the balance at the end of his career.

Therefore, she moved the superior court to enter a Qualified Domestic Relations Order (QDRO) to "enforce the agreement incorporated in the 1981 divorce decree."

Superior Court Judge Walter L. Carpeneti granted Ilene's motion. He also signed an "Order Acceptable for Processing Dividing Civil Service Retired Pay," which Ilene's attorney prepared. That order (1) provided that Ilene "is entitled to thirty-three and one third percent (33–1/3%) of [Jerrold's] self only annuity less the cost of the survivor annuity under the Civil Service Retirement System," (2) directed OPM to pay Ilene her share of Jerrold's annuity directly, (3) provided for a "former spouse annuity" for Ilene should Jerrold predecease her, and (4) directed OPM to pay Ilene's share to the children of the marriage should she predecease Jerrold.

Jerrold unsuccessfully moved for reconsideration before appealing to this court. On appeal, Jerrold argues that the superior court erred in interpreting the Divorce

---

1. The reason for Ilene's delay in writing OPM appears to be that Jerrold misled Ilene into believing that he had not retired. The record indicates that Jerrold moved to Tennessee and, in October 1993, wrote a letter to Ilene about his child support obligation. In that letter, he stated: "I believe after the date of transfer the monthly amount will drop to $562.50 from the $750." Ilene asserts that this letter led her to believe that Jerrold continued to work for the United States government in Tennessee. Jerrold appears to concede this point. In an affidavit, he stated: "Ilene is correct that I wrote to her that I had 'transferred.' 'Transfer' is the technically correct term in the federal service for my move from Alaska to Tennessee and to retired status. In any event, I agree I should have explicitly said that I was retiring."

Agreement to give Ilene one-third of his entire retirement annuity because that annuity includes benefits that he earned after the parties' divorce. He also argues that the superior court erred in "giving Ilene a 'survivor annuity'" and in directing OPM to pay to the parties' children Ilene's share of Jerrold's annuity should she predecease him.

## III. DISCUSSION

### A. The Superior Court Did Not Err in Concluding that the Divorce Agreement Entitled Ilene to One-third of Jerrold's Entire Retirement Annuity.

■ The first issue raised by Jerrold is whether the superior court erred in concluding that the Divorce Agreement entitles Ilene to one-third of his entire annuity.[2] Paragraph seven of the Divorce Agreement provides that Jerrold will pay Ilene "33–1/3 percent of his retirement with the Federal government." Jerrold asserts that it is significant that the agreement does not specifically refer to the retirement benefits that he earned before *and* after the divorce. He argues that without such an express reference to his post-divorce benefits, paragraph seven of the Divorce Agreement entitles Ilene to only one-third of the retirement benefits that he earned during the marriage.

■ To the extent that a party earns retirement benefits during marriage, the benefits are marital assets and are subject to equitable division. *See Rice v. Rice,* 757 P.2d 60, 61 (Alaska 1988). Accordingly, each spouse is presumptively entitled to an equal share of the retirement benefits earned during the marriage. *See Gabaig v. Gabaig,* 717 P.2d 835, 842 (Alaska 1986). Ilene contends that the Divorce Agreement allocates to her an interest in Jerrold's annuity that is equal to the amount to which she is presumptively entitled under cases such as *Rice* and *Gabaig.* Specifically, she asserts that the parties agreed that she would receive one-third of the entire annuity "based on the estimate that Jerrold had completed 2/3 of his working career at the time of the divorce and Ilene was entitled to 1/2 of whatever he earned at

the date of divorce, or 1/3 of the balance at the end of his career."

■ We conclude that the trial court did not err in adopting Ilene's interpretation of the Divorce Agreement. The plain language of the contract refers to Jerrold's "retirement," without limiting that term to retirement benefits earned during the marriage. This suggests that Ilene is entitled to one-third of Jerrold's entire retirement.

■ Extrinsic evidence also supports this interpretation of the Divorce Agreement. At the time of the divorce, Ilene's counsel drafted a proposed settlement agreement, which included a paragraph seven that is identical to paragraph seven of the Divorce Agreement. Jerrold's then-attorney reviewed the proposal and prepared written comments. The comments relating to paragraph seven informed Jerrold:

> You should carefully consider whether you want to agree to pay her a third of your pension (paragraph 7). As we discussed, whether you receive a pension, and if so its amount, depends on substantial payments that you will make for many years after the divorce. Also, her pension proposal does not bear any relation to what her support need may be. The most she is entitled to is part of the *present* value of your pension, if it ever vests. Your decision on the pension proposal should be influenced by her receptiveness to your proposals on the other points.

These comments demonstrate that Jerrold's attorney believed that paragraph seven would entitle Ilene to a portion of the benefits from the "substantial payments" Jerrold would make "after the divorce" toward his retirement. They also indicate that Jerrold's attorney recognized that the term "retirement" in paragraph seven referred to an amount that was larger than the present value of the retirement benefits that Jerrold had accumulated at the time of the divorce. Therefore, we conclude that the plain language of the Divorce Agreement and the

---

**2.** "Interpretation of a contract is a question of law for which the reviewing court uses independ-
ent judgment." *Alaska Energy Auth. v. Fairmont Ins. Co.,* 845 P.2d 420, 421 (Alaska 1993).

letter from Jerrold's then-attorney support the superior court's finding.[3]

### B. *The Superior Court Did Not Err in Awarding Ilene a Survivor Annuity.*

■ The superior court's order provides Ilene with survivor benefits:

Former Spouse [Ilene] shall be entitled to a survivor annuity. Under section 8341(h)(1) of title 5, United States Code, Former Spouse is awarded a former spouse annuity under the Civil Service Retirement System. The amount of the former spouse annuity will be equal to thirty-three and one third percent (33–1/3%) of the Employee's self only employee annuity.

Jerrold argues that the superior court erred in awarding Ilene a survivor annuity because the Divorce Agreement does not mention survivor annuities. We conclude that the superior court did not err. The superior court has inherent power, and also the duty, to enforce its decrees. *See Johnson v. Johnson,* 544 P.2d 65, 72 (Alaska 1975). We have noted that it would be "inconceivable" for a superior court to have the power to divide property between parties "yet not have the power to make the division effective." *Id.*

■ In this case, the Divorce Agreement entitled Ilene to one-third of Jerrold's entire retirement annuity. *See* Part III.A, *supra.*

It was within the superior court's inherent power to award Ilene a survivor annuity. Such an award was appropriate to ensure that Ilene would receive the full benefit of her property interest should Jerrold predecease her. We decline to disturb the superior court's decision.[4]

### C. *The Superior Court Did Not Err in Providing that the Parties' Children Would Receive Ilene's Share of Jerrold's Retirement Benefits if She Predeceased Jerrold.*

The superior court's order also contained a "Death of Former Spouse" paragraph that provided: "If [Ilene] predeceases [Jerrold], her share shall be paid to the children of the marriage." Jerrold asserts that the superior court erred in including this paragraph in its order because the Divorce Agreement "did not direct Ilene's share of Jerrold's retirement benefits to the parties' children in the event she predeceased Jerrold."[5] We conclude that the superior court did not err.

■ As discussed in Part III.B, *supra,* the superior court has the inherent power, as well as the duty, to enforce its decrees. *Johnson v. Johnson,* 544 P.2d 65, 72 (Alaska 1975). The original decree awarded Ilene an unqualified property interest in Jerrold's pension; it did not restrict Ilene's ability to

---

3. Jerrold contends that two other pieces of extrinsic evidence demonstrate that his interpretation of the Divorce Agreement is correct. First, he refers to a memorandum allegedly written by Ilene's attorney that provides:

There still exists the need to compute the value of the Federal Civil Service retirement of Mr. Wahl and that may well be the item that successfully negotiates a property settlement in this matter.

Second, Jerrold refers to a draft settlement agreement that contains a handwritten note "for 17 years as of the date of this action" next to paragraph seven and a marginal note "OK."

We conclude that the meaning of this extrinsic evidence is ambiguous. We have held that when extrinsic evidence suggests conflicting inferences that bear on the interpretation of the words of a contract, our inquiry is limited to determining whether the trier of fact's choice of inferences is supported by substantial evidence. *See Alyeska Pipeline Serv. Co. v. O'Kelley,* 645 P.2d 767, 771 n. 2 (Alaska 1982). As discussed above, substantial evidence supports the superior court's finding that Jerrold agreed to give Ilene one-third of his entire annuity.

4. Jerrold argues that the language in the court's order purporting to award Ilene a survivor annuity is "ineffective to give any survivor benefits to Ilene" because it violates 5 U.S.C. § 8341(h). That statute and its accompanying regulations govern when OPM may pay survivor annuity benefits. *See* 5 U.S.C. § 8341(h)(1); 5 C.F.R. § 838.806. The superior court determined that Ilene is entitled to one-third of Jerrold's entire retirement annuity. Because it is within the superior court's inherent power to ensure that she receives the full benefit of her property interest, we need not consider the application of 5 U.S.C. § 8341(h)(1) or its accompanying regulations to conclude that the superior court did not err in awarding Ilene a survivor annuity.

5. In his opening brief, Jerrold also claimed that 5 U.S.C. § 8341(h)(3)(B) prohibited the "Death of Former Spouse" provision. However, in his reply brief he conceded that this statute "does not preclude payment to the retiree's children after the former spouse's death."

transfer her interest to her children should she predecease Jerrold. The superior court's August 18, 1995 order protected Ilene's ability to devise her share of the pension to her children. This was within the superior court's inherent power and did not constitute reversible error.[6]

## IV. CONCLUSION

Based upon the language of the Divorce Agreement as clarified by relevant extrinsic evidence, we conclude that the superior court did not err in determining that the Divorce Agreement entitles Ilene to one-third of Jerrold's entire pension. We also conclude that the superior court acted within its inherent power to enforce its decrees when it awarded Ilene a survivor annuity and authorized the parties' children to receive Ilene's share of the pension should she predecease Jerrold. We therefore AFFIRM.

6. Jerrold also asserts that the "Death of Former Spouse" language violates 5 C.F.R. § 838.1012. This regulation governs when OPM will pay a deceased former spouse's share of an employee's retirement benefits to the former spouse's children. *See* 5 C.F.R. § 838.1012. As discussed in footnote 4, *supra*, because it is within the superi- or court's inherent power to ensure that Ilene receives the full benefit of her property interest, we need not consider the application of 5 C.F.R. § 838.1012 to conclude that the superior court did not err in including the "Death of Former Spouse" language in its order.