William ZITO, Appellant
and Cross–Appellee,

v.

Kathleen ZITO, Appellee and
Cross–Appellant.

Nos. S–8220, S–8229.

Supreme Court of Alaska.

Dec. 18, 1998.

Lynn E. Levengood, Downes, MacDonald & Levengood, P.C., Fairbanks, for Appellant/Cross–Appellee.

Valerie M. Therrien, P.C., Fairbanks, for Appellee/Cross–Appellant.

Before MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

Eight years after dissolving the marriage of Kathleen and William Zito, the superior court granted Kathleen's motion to approve a qualified domestic relations order that divided the marital share of William's retirement benefits; at the same time, the court denied Kathleen's request for survivor benefits. Both parties appeal. We hold that the court had authority to approve the post-dissolution QDRO and that it properly did so because the parties agreed when they dissolved their marriage to divide William's retirement benefits; but the court also should have awarded Kathleen survivor benefits, since they are an integral part of what the parties agreed to divide.

## I. FACTS AND PROCEEDINGS

William and Kathleen Zito dissolved their twenty-two-year marriage in 1988. Kathleen prepared the petition for dissolution, which contained a stipulated division of marital property. Kathleen and William discussed the property division and agreed upon it before filing it. William had been working for approximately twelve years as an electronics technician at the University of Alaska's Geophysical Institute in Fairbanks. Among the marital assets for division listed in the petition was William's retirement fund. The parties agreed to divide it as follows:

Retirement Fund (12 yrs invested). Value $22,500. Owned by H. (Awarded to [Joint]). Wife to be entitled to ½ of the amount accrued during the life of the marriage.

On July 19, 1988, the superior court issued an order of dissolution, which incorporated the parties' property agreement.

Following the dissolution, William continued to work for the Geophysical Institute, making additional contributions to his retirement fund. Eight years after the dissolution, he informed Kathleen that he interpreted the property agreement's stipulation concerning his retirement fund to require only that he pay Kathleen half the fund's stated $22,500 value, and interest accruing from the date of dissolution. After unsuccessfully seeking to obtain information concerning the status of William's retirement fund, Kathleen filed a motion for court approval of a qualified domestic relations order (QDRO) to enforce her understanding of the agreement. She asserted that the agreement was intended to give her half of the fund's benefits accrued during the marriage.

William opposed Kathleen's motion, arguing that the plain language of the original agreement entitled Kathleen to no more than one-half of the 1988 stated cash value of his retirement fund. William also insisted that, without a showing of grounds to modify the dissolution decree under Alaska Civil Rule 60(b), the court lacked jurisdiction to alter the decree by adding a QDRO.

Superior Court Judge Mary E. Greene held an evidentiary hearing to determine the meaning of the original agreement fund. After considering testimony from William and Kathleen, Judge Greene granted Kathleen's motion to approve a QDRO. Judge Greene found that the dissolution petition's provision distributing William's retirement benefits was ambiguous:

I find that it could be read either of two ways. You could read it as one-half of the amount in the benefits account, which [implies] a buy-out or a cash-out, or it could be read as one-half of the marital portion of retirement benefits, which is one-half of the amount of retirement benefits.

Judge Greene went on to resolve the ambiguity in Kathleen's favor, finding it most likely that the parties intended Kathleen to receive half of the retirement benefits accrued during the marriage, "distributed at the time of retirement, or whatever the plan allow[s]."

In reaching this conclusion, Judge Greene considered the totality of the evidence bearing on the meaning of the original agreement. Noting that another provision in the property division agreement expressly called for Kathleen "to be bought out of ½ the equity" in the marital residence, the judge

found the absence of express buy-out language in the retirement-fund provision to be a telling indicator of the parties' intent to divide William's pension benefits rather than to arrange a buy-out of Kathleen's interest.

The judge also found the provision dealing with division of equity in the marital residence significant in another . respect. The dissolution petition listed the value of the parties' equity as $52,900; yet the parties' testimony established that they actually settled William's buy-out of Kathleen's interest for considerably less than half of the listed equity value. They based this settlement on an appraisal prepared after the dissolution petition had been filed but before the dissolution was finalized. This suggested to the court that they did not regard the values listed in the petition as binding, thus making it unlikely that they meant to rely on the listed value of the retirement fund as a basis for a buy-out. The court thought it more likely that the agreement concerning William's retirement fund reflected "a process [for dividing the benefits] as opposed to necessary values [for use in a buy-out]."

Judge Greene noted several other factors favoring the same conclusion, including William's failure to make any post-dissolution efforts to pay Kathleen the buy-out value that he claimed he had agreed to pay her, the wording of the retirement-fund provision, which Judge Greene found consistent with language that laypersons might be expected to use in dividing future retirement benefits, and the fact that a buy-out agreement for the present value of a retirement benefit was not the most common practice at the time of dissolution.

Although Judge Greene approved a QDRO, she declined to order that Kathleen be given survivor benefits covering her interest in the retirement plan. Finding no "agreement as to either life insurance or survivor benefits," the court struck from Kathleen's proposed QDRO a paragraph directing that Kathleen "shall be treated as a

surviving spouse to the extent of benefits acquired during the marriage[.]"

William appeals, challenging the court's jurisdiction to issue the QDRO and its interpretation of the original property-division agreement. Kathleen cross-appeals, challenging the court's refusal to award survivor benefits.

## II. DISCUSSION

### A. William's Appeal

Although William's brief lists sixteen specific issues, these issues raise two basic points: (1) that the court lacked authority to modify the original dissolution decree by adding a QDRO, and (2) that the court misinterpreted the clear language of the agreement dividing William's pension. Neither point is well taken.

■ William argues that the superior court has no inherent power to modify the terms of a property settlement incorporated in a final dissolution order.[1] He asserts that the court thus lacked jurisdiction to issue a QDRO unless Kathleen established grounds for relief from judgment under Alaska Civil Rule 60(b). William points out that Kathleen neither alleged nor proved any such grounds. But no such grounds were necessary. Assuming that the original dissolution order included an agreement to divide the marital interest in retirement benefits, issuance of a post-dissolution QDRO would neither add to nor modify the original judgment. A QDRO simply enforces a court order calling for division of retirement benefits.[2] "The superior court has inherent power, and also the duty, to enforce its decrees."[3]

■ William goes on to argue that the provision in the dissolution petition dealing with his retirement fund unambiguously describes the parties' agreement for William to buy out Kathleen's interest in the fund for $11,250—half its listed value. Our examina-

---

1. See, e.g., Morris v. Morris, 908 P.2d 425, 427–28 (Alaska 1995).

2. See Wahl v. Wahl, 945 P.2d 1229, 1232 (Alaska 1997); see also AS 39.35.680(34) (defining "qualified domestic relations order").

3. Wahl, 945 P.2d at 1232. ·

tion of the record, however, leads us to conclude that Judge Greene did not err in deciding that the retirement-fund agreement is ambiguous. Moreover, the record strongly supports Judge Greene's detailed findings resolving this ambiguity in Kathleen's favor.[4]

■ William asserts that any ambiguity in the agreement must be resolved against Kathleen because she wrote the petition for dissolution.[5] But that rule has no relevance here, for it "applies only to contracts of adhesion where the parties are 'of such disproportionate bargaining power that [one of them] could not have negotiated for variations in the terms of [a] standard [contract].'"[6]

Finding no error, we affirm the court's decision granting Kathleen's motion to approve the QDRO.

### B. *Kathleen's Cross–Appeal*

Kathleen challenges the trial court's refusal to include a provision in the QDRO granting her the right to survivor benefits for her portion of William's retirement fund. At the evidentiary hearing, Kathleen candidly acknowledged that when she drafted the provision dividing the marital portion of William's retirement fund, she did not specifically consider the issue of survivor benefits. Relying on Kathleen's testimony, Judge Greene found that the dissolution decree did not include an agreement for survivor benefits.

After Judge Greene decided this case, however, we issued an opinion in *Wahl v. Wahl*[7] approving an award of survivor benefits under similar circumstances.[8] We observed in *Wahl* that, "[t]o the extent that a party earns retirement benefits during marriage, the benefits are marital assets and are subject to equitable division."[9] For this reason, we held that "each spouse is presumptively entitled to an equal share of the retirement benefits earned during the marriage."[10] And after observing that "[t]he superior court has inherent power, and also the duty, to enforce its decrees," we concluded that "[i]t was within the superior court's inherent power to award ... a survivor annuity."[11]

■ Like the present case, *Wahl* involved no express agreement concerning survivor benefits, and no evidence suggesting that the parties had actually considered such an agreement. Yet we held that a survivor annuity "was appropriate to ensure that Ilene [Wahl] would receive the full benefit of her property interest should Jerrold [Wahl] predecease her."[12] This holding implicitly recognizes that survivor benefits are an intrinsic part of "the retirement benefits earned during the marriage," of which "each spouse is presumptively entitled to an equal

4. Contract principles govern in interpreting property settlement agreements that are incorporated in dissolution decrees. *See Keffer v. Keffer*, 852 P.2d 394, 397 (Alaska 1993). In resolving disputes concerning the meaning of an agreement, the court begins by "viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms," in order to determine if those terms are ambiguous—that is, if they "are reasonably subject to differing interpretation." *Wessells v. State, Dep't of Highways*, 562 P.2d 1042, 1046 (Alaska 1977); *see also Keffer*, 852 P.2d at 397. When the court finds ambiguity, it must attempt to resolve it by determining the reasonable expectations of the contracting parties. *See Wessells*, 562 P.2d at 1046, 1048; *Keffer*, 852 P.2d at 397. Contract interpretation ordinarily raises questions of law that are reviewed de novo. *See Wahl*, 945 P.2d at 1231 n. 2. But when the trial court must determine the meaning of a contract based on extrinsic evidence that raises conflicting inferences, "our inquiry is limited to determining whether the trier of fact's choice of inferences is supported by substantial evidence." *Id.* at 1232 n. 3 (citing

*Alyeska Pipeline Serv. Co. v. O'Kelley*, 645 P.2d 767, 771 n. 2 (Alaska 1982)).

5. *See, e.g., Wessells*, 562 P.2d at 1048; *Restatement (Second) of Contracts* § 206.

6. *Little Susitna Constr. Co. v. Soil Processing, Inc.*, 944 P.2d 20, 25 n. 7 (Alaska 1997) (quoting *Graham v. Rockman*, 504 P.2d 1351, 1357 (Alaska 1972)).

7. 945 P.2d 1229 (Alaska 1997).

8. *See id.* at 1232.

9. *Id.* at 1231 (citing *Rice v. Rice*, 757 P.2d 60, 61 (Alaska 1988)).

10. *Id.* (citing *Gabaig v. Gabaig*, 717 P.2d 835, 842 (Alaska 1986)).

11. *Id.* at 1232.

12. *Id.*

share."[13]  We make explicit here what *Wahl* left implicit: Barring an express understanding to the contrary, an agreement for equitable division of retirement benefits earned during a marriage presumptively encompasses survivor benefits.

■ Accordingly, Kathleen was not required to prove a separate agreement concerning her right to survivor benefits. Rather, an award of survivor benefits "was appropriate to ensure that [she] would receive the full benefit of her property interest."[14]  We must therefore remand this case for amendment of the QDRO to restore the deleted paragraph providing for Kathleen's survivor benefits.

We also note an apparent error in the approved QDRO. Paragraph seven of the QDRO states that Kathleen's share of the retirement benefits should consist of "½ of the amount accrued during the time period from December 18, 1966, through July 19, 1988 (259 months), divided by [William's] total number of months in the plan[.]"  The 259–month span mentioned in this language reflects the total length of the Zitos' marriage, not the period during which William accrued retirement.  William apparently began working for the University of Alaska in 1976, since the petition for dissolution claims only twelve years of accrued retirement contributions as of 1988.  If the petition is correct, the accrual period listed in paragraph seven should be 144 months, not 259 months.  The superior court should address this issue on remand.

## III. *CONCLUSION*

For the foregoing reasons, we AFFIRM the superior court's order granting Kathleen's motion to approve the QDRO, we REVERSE its denial of Kathleen's request for an award of survivor benefits, and we REMAND to the superior court for amendment of the QDRO as directed in this opinion.

13.  *Id.* at 1231.

14.  *Id.* at 1232.