*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DAVID F. THOMSON, | ) | |
| | ) | Supreme Court No. S-16155 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-06-00608 CI |
| v. | ) | |
| | ) | O P I N I O N |
| MARJORIE W. THOMSON, | ) | |
| | ) | No. 7173 – May 19, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, William B. Carey, Judge.

Appearances: Michael A. D. Stanley, Juneau, for Appellant. Paul H. Grant, Juneau, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

CARNEY, Justice.

## I.   INTRODUCTION

In 2006 a divorcing couple agreed to divide the husband's retirement benefit based on its present value and implemented the division with a Qualified Domestic Relations Order (QDRO). In 2014, after the husband received an updated benefit projection that calculated the wife's share of the benefit using his salary at retirement instead of at divorce, he sought to modify the QDRO. He asked the court to require that her benefit be based upon the same salary data used in the 2006 calculation.

The superior court denied the motion. Because the settlement did not contain clear language establishing the use of the earlier salary as required by *Hartley v. Hartley*,[1] we affirm.

## II.     FACTS AND PROCEEDINGS

### A.     The 2006 Divorce And Property Settlement

David and Marjorie Thomson married in 1982 and permanently separated on December 31, 2004. Working with a mediator, they developed a property settlement agreement that was incorporated into their August 9, 2006 divorce decree. David retained the marital home, so the property settlement assigned about 53% of the net estate to Marjorie to help her establish adequate housing for the couple's minor children. They agreed that this division "fairly allocate[d] the economic effect of their divorce" as required by AS 25.24.160(a)(4).

Among the assets divided were retirement accounts belonging to both, including their State of Alaska Public Employees' Retirement System (PERS) retirement accounts. David was still working for the State and had accrued a little more than 20 years of PERS service credit when the parties separated. The parties agreed on a value for David's PERS account based on its present value as calculated by a third party company. The company used David's most recent average earnings for 2003-2005 to calculate a projected benefit if he retired at the expected date of April 1, 2015. It then determined that the March 2006 present value of his benefits was $286,882 and that the marital portion was $271,316. That amount was based on the proportion of David's PERS service that occurred between their 1982 marriage and their separation on December 31, 2004.

---

[1]     205 P.3d 342, 350 (Alaska 2009).

The parties allocated the agreed-upon value of David's PERS benefit along with the agreed values of their other assets between themselves in a chart of their marital assets. Once they reached what they considered a fair distribution of the entire estate in dollar terms, they calculated what percentage of David's PERS benefit was on Marjorie's side of the ledger.

Based on these calculations, the property settlement agreement provided that Marjorie would receive 46.96% of "the marital portion of David's account" to be distributed via a QDRO. The settlement also provided that each party would "solely . . . retain other property acquired after their 31 December 2004 permanent separation. That property is agreed to be non-marital and neither party is making a claim to it." The QDRO submitted by the parties said, in relevant part, that "Marjorie W. Thomson, as the Alternate Payee, shall receive from the Plan, from the final monthly retirement benefit which otherwise would be payable to the Member, **46.96%** of the total monthly benefit which is based on credited service accrued from August 7, 1982 to December 31, 2004." (Emphasis in original.) The court signed this QDRO along with the divorce decree and settlement on August 9, 2006.

B.      **The Present Dispute Over The QDRO Distribution Amount**

In the fall of 2014 David obtained an updated projection of his PERS benefits from the state Division of Retirement and Benefits (DRB). The projection estimated his benefits as of a retirement date of May 1, 2015 and showed how those benefits would be affected by the QDRO. The benefits were calculated using David's average earnings for his final three years of employment, 2013-2015. Due to his significantly increased salary and about ten additional years of credited service, David's

retirement benefit was projected at about 80% more than the 2006 projection.[2]  Under the QDRO Marjorie would receive "nearly double" what David had expected based on the earlier projection.  When David questioned why the salary years from the 2006 projection were not used to calculate Marjorie's payment, DRB reportedly responded that he might need to amend the QDRO to do so.

David then moved to amend the QDRO to have Marjorie's benefit calculated using the salary years from the 2006 projection.  He argued that such an amendment would "conform [it] to the parties' property settlement and effectuate the agreed distribution of David's PERS benefit."  He argued that the parties had relied upon the 2003-2005 salary data when they divided their assets.  According to David, the settlement language and QDRO demonstrated that Marjorie's payment had to be calculated based on the 2006 figures "so that her share would be limited to the 'marital portion' of his account."  He further argued that using the 2014 figures would allow her to benefit from non-marital property he had acquired after their divorce, contrary to their settlement agreement.

Marjorie responded that *Hartley v. Hartley* barred David's interpretation of the settlement and his proposed amendment of the QDRO:  "Absent clear language to the contrary in a property division agreement, a court should base the division of retirement benefits on the employee spouse's high-three salary years at the time of retirement."[3]

The superior court agreed with Marjorie and found the *Hartley* rationale "persuasive and controlling in this instance."  It further stated that "no language in the

---

[2]    David had remarried, so this 80% increase in his projected benefit accounted for a survivor benefit for his new wife.  Without the survivor benefit, the 2014 projected benefit was more than two and a half times the 2006 projection.

[3]    *Hartley*, 205 P.3d at 350.

QDRO or in the property agreement . . . requires a different conclusion" and denied the motion to amend. David moved for reconsideration, arguing that the court had overlooked evidence of the parties' intent and that its decision would result in Marjorie receiving more of the marital estate than the parties had agreed. The superior court denied the motion because the agreement did not contain the clear and unambiguous language required by *Hartley*.

David appeals.

## III. STANDARD OF REVIEW

"When the parties have reached a settlement as to property division, '[w]e apply basic contract interpretation principles to interpret a property division agreement incorporated into a divorce decree.' "[4] "We treat the interpretation of contract language as a question of law and interpret the language de novo."[5]

## IV. DISCUSSION

Interpretation of the parties' property settlement agreement is the central issue before us. Interpretation of such an agreement is governed by contract principles,[6] which require us "to give effect to the reasonable expectations of the parties."[7] If the contract language is not ambiguous, "we decide the meaning of the contract as a matter

---

[4] *Herring v. Herring*, 373 P.3d 521, 528 (Alaska 2016) (alteration in original) (quoting *Cook v. Cook*, 249 P.3d 1070, 1077 (Alaska 2011)).

[5] *Id.* (alteration omitted) (quoting *Cook*, 249 P.3d at 1077). Though David also raises a question of fact — the parties' intent — only David introduced extrinsic evidence, and the superior court made no factual findings for us to review.

[6] *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012) (citing *Zito v. Zito*, 969 P.2d 1144, 1147 n.4 (Alaska 1998)).

[7] *Id.* (quoting *Knutson v. Knutson*, 973 P.2d 596, 600 (Alaska 1999)).

of law."[8]  "An ambiguity exists only where the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms."[9]

In *Hartley* we established a rule governing how courts interpret property agreement provisions that divide retirement assets.[10]  In that case a divorcing couple agreed to divide a retirement account without specifying the salary years to be used in calculating the benefit amount.[11]  The husband objected to the superior court's adoption of a QDRO that explicitly based the calculation on his three highest paid salary years at retirement.[12]  We concluded that the "marital foundation theory"[13] was "generally the most equitable" approach to dividing retirement benefits and held that, "[a]bsent clear language to the contrary in a property division agreement, a court should base the

---

[8]     *Krushensky v. Farinas*, 189 P.3d 1056, 1060 (Alaska 2008) (citing *Keffer v. Keffer*, 852 P.2d 394, 397 (Alaska 1993)).

[9]     *Villars*, 277 P.3d at 768-69 (quoting *N. Pac. Processors, Inc. v. City & Borough of Yakutat, Alaska*, 113 P.3d 575, 579 (Alaska 2005)).

[10]     205 P.3d 342, 349-50 (Alaska 2009).

[11]     *Id.* at 345-46.

[12]     *Id.* at 346.

[13]     "This theory reasons 'that a post-divorce merit increase is based upon the employee's entire history of service to the employer.  In other words, the post[-]divorce increases are built upon a foundation of prior marital efforts' and therefore the increases are not separate property. . . . [T]his approach [is] 'better policy' because it 'avoids undervaluation of contributions made early in a marriage' and 'gives more dollars to the spouse who assisted in the development of the employee's career, and less dollars to the spouse who was the passive beneficiary of that career after it was established.' "  *Id.* at 349-50 (quoting 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 6:26, at 171, 183 (3d ed. 2005)).

division of retirement benefits on the employee spouse's high-three salary years at the time of retirement."[14]

David's PERS is a defined benefit plan. Under a defined benefit plan, a retired employee "is entitled to a fixed periodic payment."[15] The payment's amount generally depends on the employee's prior salary and length of service.[16] David's benefit is based on his years of service and his highest average monthly salary at the time of retirement.

The Thomsons decided to distribute the marital portion of David's benefit using the "deferred distribution" method, which distributes "the benefits actually received in the future."[17] A deferred distribution of benefits is implemented via a QDRO, which does not add to or modify an agreement to distribute benefits but "simply enforces a court order calling for division of retirement benefits."[18] Here the parties agreed that Marjorie was entitled to 46.96% of the marital portion of David's PERS benefit and implemented the agreement via a QDRO. David now disputes what average monthly salary should be used to calculate Marjorie's share of the benefit.

The *Hartley* rule governs the interpretation of the Thomsons' settlement agreement, as the superior court rightly concluded. David briefly objects that *Hartley* should not apply because it had not been decided at the time of settlement. But *Hartley*'s

---

[14]    *Id.* at 349-50.

[15]    *Id.* at 347 (quoting *Comm'r, Internal Revenue v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 154 (1993)).

[16]    *Id.*

[17]    *Id.* at 348.

[18]    *Zito v. Zito*, 969 P.2d 1144, 1146 (Alaska 1998) (citing *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997)).

interpretive rule does not depend on the parties' awareness of it, as demonstrated by *Hartley* itself.[19]  Without clear language requiring the use of David's 2003-2005 salary data, Marjorie's share must be calculated based on David's actual benefit, using his highest salary data at retirement.  David also argues that several specific phrases provide the "clear language" requiring the use of the 2003-2005 salary data.  We disagree and address each of his arguments in turn.

David argues that the settlement's express statement that Marjorie has a 46.96% interest in the "marital portion" of David's PERS account and the QDRO's corresponding statement[20] that her interest is "based on credited service accrued from August 7, 1982 to December 31, 2004" prohibit using his post-separation salary to calculate her benefit.  He argues that these statements not only limit Marjorie's share to the years of service credit accrued during the marriage but also to a benefit calculated based on his salary level during the marriage.  But neither the meaning of the term "marital portion," nor the dates used in the QDRO to calculate Marjorie's share, support David's claim.

The standard meaning of "marital portion" or "marital share" in Alaska involves application of the coverture fraction, which "is calculated by dividing the number of years worked during the [marriage] by the total number of years worked."[21]

---

[19]     *Hartley*, 205 P.3d at 347-50.

[20]     Although both parties discuss the terms of the QDRO, the relevant language under *Hartley* is that of the settlement agreement.  *See Hartley*, 205 P.3d at 350.  *See also Zito*, 969 P.2d at 1146.

[21]     *Engstrom v. Engstrom*, 350 P.3d 766, 770 (Alaska 2015) (quoting *Hansen v. Hansen*, 119 P.3d 1005, 1015 (Alaska 2005)) ("Determining the [retirement health] benefits' marital portion requires calculation of the 'coverture fraction.' "). *Accord Faulkner v. Goldfuss*, 46 P.3d 993, 1003 (Alaska 2002) ("The marital share of a pension
(continued...)

David's proposed definition of "marital portion" would limit a former spouse's retirement benefits to the salary level earned during the marriage, but he has cited no cases supporting this additional meaning.[22]

The QDRO's listing of the marriage and separation dates provides no reason to reevaluate the meaning of "marital portion" in the agreement. It indicates the time period used to calculate the marital portion of the benefit. The QDRO's dates establish the numerator of the coverture fraction, while David's total period of employment would establish the denominator once he retired.[23] This understanding of the QDRO's use of the dates is bolstered by other language in the QDRO explicitly indicating that David's final benefit — calculated according to his three highest paid salary years at retirement — will be used in calculating Marjorie's share: Marjorie "shall receive . . . 46.96% *of the total monthly benefit* which is based on credited service accrued" during the marriage.[24] (Emphasis added.)

---

[21]    (...continued)
is typically determined by the coverture fraction . . . ."); *Wainwright v. Wainwright*, 888 P.2d 762, 763 (Alaska 1995) ("The marital portion of the pension will be determined by a so-called coverture fraction of 75/240. Seventy-five is the number of months of Robert's qualified employment during the marriage. Two hundred and forty will be the total number of months of qualified employment at the time of vesting.").

[22]    *Cf. Faulkner*, 46 P.3d at 1003 n.36 (using "marital share" to refer to a portion of the actual benefit at retirement).

[23]    *See Engstrom*, 350 P.3d at 770.

[24]    In addition, the dates of marriage do not correspond to the salary years David claims are required. The QDRO correctly states that the parties permanently separated at the end of 2004, but David argues Marjorie's benefit must be calculated based on his average salary in 2003-2005 — fully one-third of which is after the marriage. The parties used the permanent separation date, December 31, 2004, as the end of the marriage for property division purposes. *See Hanlon v. Hanlon*, 871 P.2d 229,
(continued...)

David also argues that a settlement clause excluding from division any property acquired after separation establishes that Marjorie is not entitled to receive a benefit calculated using his post-separation salary. That paragraph states: "The parties agree solely to retain other property acquired after their 31 December 2004 permanent separation. That property is agreed to be non-marital and neither party is making a claim to it." David argues that calculating Marjorie's monthly payment using his salary at retirement is inconsistent with this portion of the agreement.[25] But by its terms, this paragraph applies to "*other* property" acquired after separation. (Emphasis added.) It therefore does not apply to the marital portion of David's PERS account, which was by definition acquired before separation and was discussed earlier in the agreement.[26]

---

[24]    (...continued)
231 (Alaska 1994). David explains in his brief that this use of post-separation salary was acceptable because the coverture fraction was applied to ensure Marjorie received only a share of the marital portion. This is precisely the reason that Marjorie's actual benefit can be calculated using post-separation salary without her receiving more than the parties agreed on in the settlement agreement.

[25]    David also argues that "PERS service credit that [he] accrued since the parties' divorce undeniably constitutes non-marital property under this Paragraph 6." However, Marjorie has never argued that she should be entitled to the years of *service credit* David accrued after their separation, nor did the court's order allow her to receive any benefits from those years of service credit. The use of the coverture fraction prevents that. Service credit and salary are separate elements of the benefit calculation.

[26]    As we have explained, the marital foundation theory establishes that the increased value of the marital portion of a retirement benefit remains marital property, so the clause does not establish that the increased value based on David's higher post-separation salary is separate property. *See Hartley v. Hartley*, 205 P.3d 349-50 (Alaska 2009).

Therefore this provision does not contain "clear language" requiring the use of the earlier salary years.[27]

Because the settlement does not contain the clear language required by *Hartley*, we conclude that the superior court did not err when it denied David's motion. We therefore do not reach David's other claims regarding the parties' intent.

## V. CONCLUSION

The order of the superior court is AFFIRMED.

---

[27] *See id.* at 350.