*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| JENNIFER X.L. SANDVIK, | ) |
| | ) Supreme Court No. S-18852 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-21-04788 CI |
| v. | ) |
| | ) O P I N I O N |
| IAN FRAZIER, | ) |
| | ) No. 7782 – August 8, 2025 |
| Appellee. | ) |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Thomas A. Matthews, Judge.

Appearances: Justin Eschbacher, Eschbacher and Eschbacher, P.C., Anchorage, for Appellant Jennifer X.L. Sandvik. Darryl L. Thompson, P.C., Anchorage, for Appellee Ian Frazier.

Before: Carney, Borghesan, Henderson, and Pate, Justices [Maassen, Chief Justice, not participating].

HENDERSON, Justice.

## I.    INTRODUCTION

Divorcing spouses agreed to equally divide the marital portion of the husband's pension plan and the associated survivor benefits. But the plan's terms prevented the parties from dividing the survivor benefits as they had agreed. The parties thereafter submitted the issue to the superior court. The husband offered to purchase life insurance in the event that the court selected an option under the plan that had the

potential to divest the wife of her benefits before her death. The superior court selected this option, but did not require the husband to purchase life insurance.

The wife appeals, arguing that the superior court erred by failing to ensure that she received survivor benefits for the rest of her life. Because the superior court did not explain why it did not require the husband to purchase life insurance, we vacate the superior court's order and remand for the court to reconsider the life insurance offer and explain its decision.

## II.    FACTS AND PROCEEDINGS

### A.    The Parties' Settlement Agreement And Problems With Implementation

Jennifer Sandvik and Ian Frazier married in 1999 and separated in 2020. In 2022 the parties reached a settlement agreement. They agreed that the marital portion of Frazier's Alaska Railroad Corporation (ARRC) Pension Plan would be divided equally by a Qualified Domestic Relations Order (QDRO) with 50% survivorship to Sandvik.[1]

After reaching this agreement, the parties began working with the ARRC retirement plan administrators to fashion a suitable QDRO. This is where problems arose, because the plan's terms could not accommodate the parties' agreement as it related to the survivor benefits.

The plan only allowed for three survivor-benefits options. The first was to name no survivor beneficiary. Neither party wanted this. The second was to treat Sandvik as Frazier's surviving spouse. This would entitle her to 100% of the survivor benefits, including benefits that accrued before, during, and even after the marriage. The third option would entitle Sandvik to a conditional survivor benefit equal to her

---

[1]    Frazier began working at ARRC in 1991.

marital interest.[2]  The benefit would be conditional because if Frazier remarried, then Sandvik's benefits would "cease upon the earlier of [Sandvik's] date of death or the date the surviving spouse's benefit ceases."  In effect, this meant that Sandvik's survivor benefits could cease if Frazier remarried and named his new spouse as a joint survivor beneficiary, and then he and his new spouse predeceased Sandvik.

Given these limited options, Frazier submitted a proposed QDRO that incorporated the option under the plan that allowed him to name a future spouse as a joint survivor beneficiary.  Sandvik objected in writing, arguing that Frazier's proposed QDRO failed to capture the purpose of the parties' agreement to ensure that she would receive benefits relating to her interest in the plan for the remainder of her life.  Frazier filed a response, arguing that the parties had agreed that Sandvik was only entitled to 50% of the marital portion of the survivor benefits.  Therefore Frazier asked the court to "consider reforming the parties' agreement" by selecting the third option under the plan and then requiring him to purchase a life insurance policy if he remarried to "protect[] the full extent of [Sandvik's] entitlement."

At a hearing held in September 2022 the parties made clear that they each believed that they had reached an agreement as to the plan's division.  As Frazier's counsel put it, "[T]here's no disagreement over what the agreement is, but how do we make it happen?"  After hearing from the parties, the court requested that they craft a stipulation regarding exactly "what issue [they] would like the court to decide."

### B.     The Parties' Stipulations

Each party subsequently submitted a stipulation.  Both Frazier and Sandvik maintained that they had agreed to divide the marital portion of the plan equally

---

[2]     This interest would be "a share of each monthly preretirement death benefit payment, determined by multiplying the monthly payment by a fraction, the numerator of which is the number of months the Alternate Payee was married to the Participant during which the Participant accrued service credit and the denominator of which is the number of months of credited service accrued by the Participant at death."

by QDRO "with a 50% survivorship to [Sandvik]." Both parties also recognized that this was not possible under the terms of the plan.

Frazier maintained that the court should select the option under the plan that allowed him to name a future spouse as a survivor beneficiary, and then order him to purchase life insurance should he remarry in order to guarantee payments equivalent to survivor benefits to Sandvik for the rest of her life. He believed that this option would ensure that Sandvik received the agreed-upon 50% survivor benefit, and would also allow him to provide for a future spouse. Frazier viewed the third option plus life insurance to be a "win-win" solution.

Sandvik did not see it this way. She did not trust Frazier to diligently pay the life insurance premiums. She argued that the court should order the option that would entitle her to 100% of the survivor benefits under the plan.

## C.    The Superior Court's Decision

The superior court ultimately selected the option under the plan that allowed Frazier to name a future spouse as a joint survivor beneficiary, but did not require Frazier to purchase life insurance. The court first observed that the parties had agreed that "the marital portion of Mr. Frazier's [plan] would be divided equally by QDRO with a 50% survivorship to Ms. Sandvik." The court reasoned that it would not require Frazier to name Sandvik as the surviving spouse because the parties had agreed that Sandvik was entitled only to receive her interest of the marital portion of the plan. However, the court did not reference or incorporate into its order Frazier's offer to purchase a life insurance policy. The court noted that while "the third option may not be entirely what either party wants, and it carries certain risks for both parties, it appears to most fairly allocate the risks."

Sandvik appeals, arguing that the superior court erred by not selecting the option under the plan that would make her the sole survivor beneficiary, and by failing to ensure that she received survivor benefits for her lifetime.

## III. STANDARD OF REVIEW

"We construe property settlement agreements in divorce actions in accordance with basic principles of contract law."[3]  "When interpreting any contract, the goal is to give effect to the reasonable expectations of the parties.  We review the interpretation of a contract de novo.  Where the superior court considers extrinsic evidence in interpreting contract terms, however, we will review the superior court's factual determinations for clear error and inferences drawn from that extrinsic evidence for support by substantial evidence."[4]

"The supplying of an omitted term is not technically [contract] interpretation, but the two are closely related; courts often speak of an 'implied' term."[5]  When a court supplies an omitted term, we review that decision for an abuse of discretion.[6]

## IV. DISCUSSION

### A. The Superior Court Supplied An Essential Term At The Parties' Request.

We begin by observing that when Sandvik and Frazier submitted the survivor-benefits issue to the superior court, they failed to clearly identify what decision they were asking the superior court to make and what legal framework controlled that decision.  Therefore, before determining whether the court erred, we must characterize what it is the court did when it decided the survivor-benefits issue.

---

[3]  *Krushensky v. Farinas*, 189 P.3d 1056, 1060 (Alaska 2008) (citing *Keffer v. Keffer*, 852 P.2d 394, 397 (Alaska 1993)).

[4]  *Mahan v. Mahan*, 347 P.3d 91, 94 (Alaska 2015) (quoting *Villars v. Villars*, 277 P.3d 763, 768 (Alaska 2012)).

[5]  RESTATEMENT (SECOND) OF CONTS. § 204 cmt. a (AM. L. INST. 1981).

[6]  *See Disotell v. Stiltner*, 100 P.3d 890, 896 (Alaska 2004) (explaining "superior court has discretion to decide" what is a reasonable term to supply).

As explained above, we "construe property settlement agreements in divorce actions in accordance with basic principles of contract law."[7]  And we have often turned to the *Restatement (Second) of Contracts* when reviewing contract matters.[8]  Section 266 of the *Restatement* provides that a party has no duty to perform under a contract where the "principal purpose" of the agreement is "substantially frustrated."[9]

Here, as the parties explained, the purpose of this agreement was to ensure that Sandvik continued to receive benefits relating to her interest in the marital portion of the plan for the rest of her life.  Therefore, the ARRC plan's inability to accommodate this agreement "substantially frustrated" the agreement's principal purpose.[10]

The *Restatement* also provides that when the primary purpose of an agreement is substantially frustrated, the court has the power to "grant relief on such terms as justice requires."[11]  This power includes the ability to "[s]upply[] a term to avoid injustice."[12]  "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances [may be] supplied by the court."[13]

---

[7]     *Krushensky*, 189 P.3d at 1060 (citing *Keffer*, 852 P.2d at 397).

[8]     *See Disotell*, 100 P.3d at 896 (looking to RESTATEMENT (SECOND) OF CONTS. § 204 for guidance regarding when court should supply term to contract); *State Div. of Agric., Agric. Revolving Loan Fund v. Carpenter*, 869 P.2d 1181, 1184 (Alaska 1994) (relying on RESTATEMENT (SECOND) OF CONTS. § 266).

[9]     RESTATEMENT (SECOND) OF CONTS. § 266(2).

[10]    *Id.*

[11]    *Id.* § 272(2).

[12]    *Id.* § 272 cmt. c.

[13]    *Id.* § 204.

Here, the superior court's decision regarding the survivor-benefits issue is best understood as an exercise of its ability to supply a term where the parties requested that it do so. As Frazier's counsel acknowledged, there was "no disagreement over what the agreement" was, the parties just needed the court's help to implement it. The court found that the parties had initially agreed to divide the marital portion of Frazier's retirement plan equally by QDRO with 50% survivorship to Sandvik, but that the plan's terms did not allow for division. And at the parties' request, the court supplied a term to best capture the essential parts of the agreement.

B. **We Remand This Matter For The Court To Explain Why It Did Not Require Frazier To Purchase Life Insurance Or To Make Such Modification As It Deems Necessary To Protect Sandvik's Interest.**

Having placed the superior court's decision within the relevant legal framework, we move on to determine whether the court abused its discretion. We begin by examining the nature of the benefits at issue. Survivor benefits provide "a right to receive periodic payments over the nonowning spouse's lifetime, following the death of the owning spouse."[14] The purpose of survivor benefits is to "support the beneficiary after the death of the owning spouse causes termination of normal retirement benefits."[15]

Sandvik argues that because survivor benefits are intended to provide for the beneficiary spouse when the plan-owning spouse dies, the superior court erred when it selected an option under the plan that took her "bargained-for security away." And she suggests that the court should have selected the option under the plan that would make her the sole survivor beneficiary.

But making Sandvik the sole survivor beneficiary would have entitled her to more than her marital share of the plan. Because this option deviated from the

---

[14] 2 BRETT R. TURNER, EQUITABLE DISTRIB. OF PROP. § 6:43 (4th ed. 2024).

[15] *Id.*

parties' agreement that only the marital portion of the plan should be divided equally with "50% survivorship" to Sandvik, the superior court was within its discretion to reject Sandvik's proposed solution. This is true especially in light of Frazier's "win-win" offer to purchase life insurance in the event that he named a future spouse as a joint survivor beneficiary.

However, the superior court did not incorporate Frazier's life insurance offer into its order; nor did it explain why it chose not to. This was problematic, especially in light of our precedent describing the role that survivor benefits play in ensuring that beneficiary spouses receive the full benefit of their property interest in a plan for the rest of their lives.

In *Zito v. Zito*, we made clear that "[b]arring an express understanding to the contrary, an agreement for equitable division of retirement benefits earned during a marriage presumptively encompasses survivor benefits."[16] This presumption flowed from the need to ensure that a beneficiary spouse "receive[s] the full benefit of her property interest" in a retirement plan should the plan-owning spouse die first.[17] And in *Conner v. Conner*, we reiterated that "survivor benefits are an 'intrinsic part of the retirement benefits earned during the marriage.' "[18] Further, we instructed that "when dividing retirement benefits as part of the marital estate, trial courts must protect a spouse's interest in the retirement benefits *either by requiring life insurance* or by including a clause in the [QDRO] requiring that survivor benefits be paid to that spouse."[19]

---

[16]    969 P.2d 1144, 1148 (Alaska 1998).

[17]    *Id.* at 1147 (quoting *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997)).

[18]    68 P.3d 1232, 1238 (Alaska 2003) (quoting *Zito*, 969 P.2d at 1147).

[19]    *Id.* at 1239 (emphasis added) (citing *McDougall v. Lumpkin*, 11 P.3d 990, 996 (Alaska 2000)).

On appeal, Frazier argues that the parties had an agreement contrary to the *Zito* presumption. Specifically, he argues that the parties did not agree that Sandvik would receive survivor benefits for the rest of her life, but instead left it to the superior court to decide how to award her the benefits. But Frazier's argument is inconsistent with his stipulation that he and Sandvik had agreed that she should receive a "50% survivorship" interest, and is inconsistent with his offer to purchase life insurance.

The superior court's failure to explain why it did not incorporate the life insurance option into its order makes it impossible to meaningfully determine whether the superior court's decision was a reasonable means of ensuring that Sandvik received the benefit of her property interest for the rest of her life. We therefore remand this matter for the court to explain why its selection of the third option under the plan — without incorporating Frazier's life insurance offer — adequately protected Sandvik's interest in the plan, or for the court to make such modification as it deems necessary to protect Sandvik's interest.

## V. CONCLUSION

We VACATE the superior court's decision and REMAND for further proceedings consistent with this decision.